424 So.2d 1307 (1982)
Robert CHANDLER
v.
CITY OF LANETT.
81-271.
Supreme Court of Alabama.
December 17, 1982.
*1308 Donald M. Phillips, Lanett, for appellant.
E. Drexel Meadors, West Point, Ga., for appellee.
TORBERT, Chief Justice.
Robert Chandler, appellant herein, brought this action against the City of Lanett and Councilman Knowles seeking damages and reinstatement to a position equivalent to the one he had occupied prior to his dismissal. After hearing the evidence, the trial court entered an order holding: (1) the personnel policies of the City of Lanett satisfy Code 1975, § 11-43-180, which requires the City to provide a civil service merit system for its police department; (2) that the City substantially complied with the provisions of the personnel policies; and (3) that it had not been shown to the reasonable satisfaction of the Court that the City had abused its discretion in discharging Chandler, or that the City's action was not based on substantial evidence.
At the time his employment was terminated, Chandler was serving as acting police chief. Chandler had previously been employed as an investigator and lieutenant. On October 6, 1980, John Knowles, along with other council members, and the recently elected mayor, Mac Langley, assumed office. At the City Council's first meeting on October 6, Councilman Knowles made the motion to eliminate the job of investigator in the Police Department. He stated that this action was purely an economic move to reduce the City's costs and that the men who were serving as investigators would be offered other jobs in the Department. The motion was unanimously carried. Councilman Knowles, who was also Chairman of the Police Committee, made the motion to elect Jimmy Smith to *1309 the position of Police Chief. This motion was unanimously carried. The next day, the newly appointed police chief told Chandler that the position of investigator held by Chandler had been abolished by the council. Evidence was presented that Chandler was offered a job with the police department as a patrolman but he refused the position. Chief Smith testified that he told Chandler to report for duty and advised Chandler that if he did not report for duty it would be understood that Chandler was leaving the Lanett Police Department to collect unemployment benefits. On October 10, Chandler received a hand-delivered letter by Chief Smith informing him he was suspended because he had failed to report for work as a patrolman. The letter also stated that Chief Smith would meet with Chandler at three o'clock p.m. on October 11. Chandler did not appear at this meeting. On October 18, the mayor sent Chandler a letter advising him that he had been dismissed, and further advising him that he had a right to a public hearing.
Subsequently, Chandler, with his attorneys, attended a hearing before the mayor and five members of the council. After the hearing, the council voted unanimously to uphold his discharge.
The first issue we address is whether the City of Lanett has complied with the legislative act requiring every municipality to provide a civil service merit system for law enforcement officers. We affirm the trial court's judgment that the City has complied with the legislation.
In 1976, the Legislature passed Act No. 372, Acts of Alabama, 1976, Vol. 1, 471-473, codified at Code 1975, § 11-43-180 through -190. Section 11-43-182 provides:
"Every municipality shall establish, separately or jointly, a civil service merit system governing the appointment, removal, tenure and official conduct of municipal law enforcement officers."
The City of Lanett adopted a personnel policy manual for the purpose of providing a systematic and uniform approach for the interpretation and administration of policies relating to city personnel. The manual provides rules for personnel procedure in the areas mandated by § 11-43-182. Specifically, section "O" of the manual covers the removal and discharge of city employees including policemen.
The applicable statutes clearly allow municipalities to have the option of establishing their own civil service merit system or accepting the system of the state. Lanett elected to establish its own procedures as set out in its personnel policy manual. Section "O" of the manual, dealing with procedures in the event of a discharge, covers areas such as counselling, warnings, written reports, layoffs, discharge, classification of offenses, appeals under the City's "Complaints Policy and Procedure" contained in Section "F," and rehiring.
It is important to note that the article does not apply to any municipality having a population of less than 5,000 people. While Lanett is covered by the statute because it has a population of approximately 7,000, it is obvious that the legislature recognized that it is not practicable or feasible that small cities and towns be required to establish and operate a civil service system that is as elaborate as the merit system of the State.
Appellant also contends that the City of Lanett denied him procedural due process and equal protection of the law in the hearing held on October 28, 1980. Appellant claims that the hearing was deficient in two respects: (1) Mayor Langley, who had earlier taken documented action against appellant prior to the appellant's hearing, voted and participated in the hearing before the City Council and (2) Councilman Knowles admitted that he had a fixed opinion before hearing any of the evidence. The trial court did not specifically address appellant's claim that the City of Lanett denied him due process of law and equal protection in the hearing before the City Council.
Mayor Langley's letter addressed to Chandler and dated October 18, 1980, states in part:
"The personnel policy of the City of Lanett states that intolerable offenses shall *1310 include, but are not restricted to, the items listed. It is my opinion that your refusal to report for work on October 8, 1980 and on October 9, 1980 without asking for or receiving permission to be absent is an intolerable offense requiring that you be discharged.
"You were suspended for failure to report to work and you have been offered the opportunity to meet with your department head, Police Chief James A. Smith, to discuss the matter. You did not appear or make any response to the offer. Chief Smith has therefore, reported the matter to me and recommended that you be discharged.
"I believe that the requirements of the personnel policy have now been complied with, and it remains for me to comply with state law. I do hereby remove you from office as a police officer of the City of Lanett, Alabama for neglect of duty and for conduct detrimental to good order and discipline.
"I shall report my act of removing you from office to the Lanett City Council at its next regular meeting on Monday, October 20, 1980.
"State Law provides that you may have a public hearing before the entire City Council before the council votes on whether or not to sustain my act of removing you. If you do not desire a public hearing, you may waive [the] same and the council may vote without a hearing."
It is clear from the record in this case that Councilman Knowles admitted he had a fixed opinion that Chief Smith had been correct in discharging Chandler before he heard any evidence. Councilman Knowles also testified that he participated and voted in the hearing before the City Council on October 28, 1980.
The United States Supreme Court in Withrow v. Larkin, 421 U.S. 35, 46-47, 95 S.Ct. 1456, 1463-1464, 43 L.Ed.2d 712 (1975), stated, "concededly a fair trial in a fair tribunal is a basic requirement of due process. In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). This applies to administrative agencies which adjudicate as well as to courts." The Court continued, "[N]ot only is a biased decisionmaker constitutionally unacceptable but `our system of law has always endeavored to prevent even the probability of unfairness.'" Withrow v. Larkin, 421 U.S. at 47, 95 S.Ct. at 1464, quoting In re Murchison, 349 U.S. at 136, 75 S.Ct. at 625.
The City Council, although it consisted of municipal officers, was the body designated to serve as judge or arbitrator in this dispute, and thus was serving in an adjudicatory capacity when it heard the proceeding and determined to uphold the decision of Mayor Langley to terminate Chandler's employment. In proceedings of this nature, the City Council must comply with the requirements of procedural due process by providing a fair trial before an impartial tribunal. See Ex Parte Greenberg, 395 So.2d 1000 (Ala.1981).
With regard to appellant's first claim, we note that the fact that Mayor Langley may have had prior and independent knowledge of the dispute would not, standing alone, be sufficient to support a finding that Chandler was deprived of the opportunity for an impartial hearing. See Robison v. Wichita Falls and North Texas Community Action Corp., 507 F.2d 245 (5th Cir.1975); McKay v. McAlexander, 268 F.2d 35 (9th Cir.1959). The Court of Civil Appeals in Board of Dental Examiners v. King, 364 So.2d 311 (Ala.Civ.App.1977), rev'd on other grounds, 364 So.2d 318, on remand, 364 So.2d 319 (Ala.Civ.App.1978), stated:
"[T]he mere fact that a professional regulatory board (which has received legislative authority to investigate and adjudicate charges against members of its profession) has had prior contact with the particular individual or considered other, separate charges against him, is not sufficient, in the absence of some showing to the contrary, to demonstrate that the board members are biased.... [A] party seeking to demonstrate prejudice or antipathy on the part of one or more board members must show ... that the risk of bias is intolerably high or such *1311 that there is a substantial temptation on the part of the members sitting in their quasi-judicial capacity to pre-judge the case with regard to any issue to be presented ...."
364 So.2d at 317.
The case before us, however, is not one in which a member of an adjudicatory body has merely had prior contacts with the particular individual or considered previous charges against him. Mayor Langley's letter to Chandler indicates that not only had Mayor Langley decided that Chandler was guilty of the offense in question, but he had also categorized the offense as an "intolerable offense" under the City's personnel policy, the punishment for which was dismissal.
We believe that, under the circumstances of this case, the risk of prejudgment is intolerably high, and it raises a sufficient possibility that Mayor Langley would, consciously or unconsciously, be so committed to his prior position that he would be likely to avoid the appearance of having changed positions.
Councilman Knowles testified that he asked Chandler to resign shortly before Knowles assumed office. Conflicting evidence was presented as to whether Knowles participated in the decision to discharge Chandler after Chandler's failure to report for duty. The record clearly indicates, however, that Councilman Knowles had reached a decision to vote to uphold the discharge of Chandler before any evidence was presented. As we have previously indicated, a showing of knowledge of a prior proceeding or facts in dispute is not, without more, sufficient to indicate bias on the part of a member of an adjudicatory body. We find that in this case the evidence went beyond mere knowledge and established the prejudgment or bias on the part of Councilman Knowles. See Ex Parte Greenberg, 395 So.2d 1000 (Ala.1981). See also, Texaco, Inc. v. FTC, 336 F.2d 754 (5th Cir.1964), vacated on other grounds, 381 U.S. 739, 85 S.Ct. 1798, 14 L.Ed.2d 714 (1965).
We conclude that the participation of Mayor Langley and Councilman Knowles in the hearing before the City Council amounted in the circumstances to a denial of due process. In light of our determination of this issue, we do not reach the other issues raised by appellant. We remand the case to the trial court with directions to enter an order consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX, JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
FAULKNER and EMBRY, JJ., dissent.
FAULKNER, Justice (dissenting).
The principal issue is whether the City has complied with the legislative act requiring the City to provide a civil service merit system for law enforcement officers.
In 1976, the legislature passed Act No. 372, Acts of Alabama, 1976, Vol. 1, pp. 471-473, codified at § 11-43-180 through -190, Code 1975. Section 11-43-180 provides: "[T]his article is enacted to assure that every municipality in this state shall be provided an acceptable civil service merit system governing the appointment, removal, tenure and official conduct of its law enforcement officers."
Section 11-43-182 provides:
"Every municipality shall establish, separately or jointly, a civil service merit system governing the appointment, removal, tenure and official conduct of municipal law enforcement officers."
Section 11-43-183 provides:
"Any municipality failing to establish such a civil service merit system for said law enforcement officers within one year after August 23, 1976 shall, subject to approval of the state personnel board, enter into an agreement with the state director of personnel to furnish the services and facilities of the state personnel department to such municipality in the administration of its law enforcement officers on merit principals [sic]. Any such municipality of the state is hereby authorized to enter into such an agreement."
*1312 Neither did the City of Lanett have a civil service merit system for law enforcement officers, nor had it entered into any agreement with the State of Alabama personnel board as required by § 11-43-183. But, the trial judge held that the City's personnel policy manual satisfied the statute requiring the City to have a civil service merit system for its police department.
The statute does not permit a substitute for a civil service merit system, and, therefore, the trial court erred when it held that the City's personnel policy manual met the requirements of a civil service merit system for law enforcement officers.
The trial court did not rule on the due process issue, and I therefore do not discuss it.
I would reverse and remand and order the City of Lanett to reinstate Robert Chandler into a position in its police department equivalent to the position held by him when he was discharged, with all pay and allowances from the date of dismissal to the date of reinstatement.