489 So.2d 509 (1986)
CITY OF HUNTSVILLE, et al.
v.
Tommy Rex BILES and John Thomas Coleman, Jr.
83-1097.
Supreme Court of Alabama.
January 31, 1986.
Specially Concurring Opinion February 14, 1986.
Rehearing Denied May 23, 1986.
*510 E. Cutter Hughes, Jr. and William W. Sanderson, Jr., of Lanier, Shaver & Herring, Huntsville, for appellants.
James S. Ward, of Corley, Moncus, Bynum & De Buys, and William J. Baxley, of Baxley, Beck, Dillard & Dauphin, Birmingham, for appellees.
PER CURIAM.
This is an appeal from a judgment awarding plaintiffs, discharged firemen, reinstatement and back pay on the grounds that they had not been accorded due process of law in their dismissals. Plaintiffs allege, and the trial court found, that the Personnel Board and the City Council of the City of Huntsville were not impartial decisionmakers because (1) the assistant city attorney who prosecuted the cases for dismissal also acted as legal advisor to the decision-making bodies, and (2) one of the city council members evidenced a fixed intention to uphold any disciplinary actions before hearing any evidence.
Plaintiffs, Tommy R. Biles and John Thomas Coleman, Jr., were firemen with *511 the City of Huntsville when the firemen's and policemen's unions called a strike against the City over terms and conditions of employment. During this strike, Biles, Coleman, and others were arrested, essentially due to friction between working policemen and the strikers. Coleman was arrested while in possession of a walkie-talkie that a policeman had set down on his car and which later was missing. Biles was arrested, allegedly for hitting and spraying mace at a policemen who was arresting another striker for shouting epithets. Biles and the other strikers present insisted that he was set upon and arrested while lying on the ground.
Coleman was charged with possessing stolen property, and Biles was charged with several offenses, including resisting arrest and disorderly conduct. All of these charges were either nol-prossed or otherwise dismissed without convictions or acquittals. The strike ended on November 23, 1978. The strikers went back to work with the understanding that none of them would be disciplined just for striking, but that those who were convicted of criminal offenses or who had destroyed city property would be subject to discipline.
On December 11, 1978, the chief of the fire department sent the two men letters informing them that their employment was terminated, subject to their right to a hearing before the Personnel Board.[1] On December 14, the director of personnel notified Biles and Coleman that they would be given hearings before the personnel committee on December 28.
At the personnel committee hearings, E. Cantey Cooper, the assistant city attorney, presented the charges to the committee. The committee members were the city attorney, the director of personnel, and the mayor's administrative assistant. After the hearing, the personnel committee voted to uphold the fire chief's decision to terminate their employment, subject to the concurrence of the mayor. The mayor concurred, and Biles and Coleman appealed to the City Council.
Some time prior to the City Council's decision, John Glenn, one of the City Council members, made the following statement to a radio reporter:
"Yes, there is no doubt in my mind that there will be three votes on the council that will support any action that the Mayor presents to the council. As far as personnel actions, if they recommend [he] be dismissed, and the Mayor approves it, he concurs with their action, I am sure there are three votes on the council that would concur with the Mayor's action."
The reporter testified that he thought Glenn made this statement during the hearings, but Glenn said he made it during the strike as an expression of support for the mayor in his negotiations with the strikers.
The City Council voted three-to-two to uphold the dismissals. Biles and Coleman filed this action in circuit court. The original complaint included several causes of action, but the court's final judgment in favor of Biles and Coleman rested only on the claim for reinstatement and back pay pursuant to 42 U.S.C. § 1983. This claim alleged several grounds, including denial of equal protection of the law, but the trial court found for the plaintiffs only on the ground that their rights to due process of law had been violated.
Under 42 U.S.C. § 1983, a person who, under color of state law, suffers a deprivation of "any rights, privileges, or immunities secured by the Constitution and laws" may have redress in an action at law, suit in equity, or other proper proceeding. The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." If a person has a sufficient claim of entitlement to continued employment, his employment *512 status is a property right. The claim of entitlement depends upon state law. Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).
Pursuant to municipal ordinance No. 76-500, the City of Huntsville adopted an employees' handbook, which describes, along with other things, different employment statuses and procedures for discipline of employees. Under "Permanent, Full-Time" employee status, the handbook says, "A permanent employee is hired on a full time permanent basis subject to the regulations concerning probationary period, termination for cause, and retirement. Employment continues during good behavior and is subject to necessity for the work." Because such employees can only be terminated for cause or if the work becomes unnecessary, they have a legitimate claim of entitlement to, and thus a property right in, their employment. Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Cf. Godwin v. City Council of City of McKenzie, 449 So.2d 1231 (Ala.1984).
Both Biles and Coleman had worked much longer than the one-year probationary period. Thus, prior to the strike, they were permanent, full-time employees who could invoke the protections of the Due Process Clause. The trial court held that, although the City could have summarily fired them for their participation in the illegal strike,[2] it reinstated their property rights in their employment by allowing them to return to work after the strike:
"The City of Huntsville administration, however, elected not to enforce its right to immediate termination of employment of the persons involved in the illegal strike but to reinstate those employees subject to the discipline of individuals on a case by case basis. Having elected that procedure, the City of Huntsville thereby reinstated the property rights of all individuals involved.... Thereafter, the city was bound to extend due process of law and equal treatment to all whom it chose to discipline...."
This holding is supported by the evidence that the mayor, in negotiating an end to the strike, agreed that no strikers would be dismissed solely for striking. Regardless of whether the strikers lost their property rights by striking (as to which we express no opinion), we affirm that portion of the trial court's judgment holding that, after they came back to work on the terms which the mayor offered, they could only be discharged for cause, after a hearing in compliance with the requirements of due process.
Before we address the trial court's holding on the merits, we must first answer the city's contention that the trial court exceeded its proper scope of review of the city council decision. The city relies largely on Ex parte City of Tuskegee, 447 So.2d 713 (Ala.1984). In that case Otto Moore, a police officer discharged by the city council after a hearing, "filed a complaint against the City, alleging that there was no substantial evidence adduced before the Council to support his discharge." Id., at 714. This Court held, with the concurrence of four Justices, that
"Under these circumstances, the review by the circuit court is, in effect, that of certiorari, and on such a review the circuit court is restricted to examining only the external validity of the proceeding.... Thus, in this case, the circuit court is limited to a review of the record made before the Council and questions of law presented thereby."
Id., at 715 (citations omitted).
The answer to the city's contention is indicated by the statement quoted above which indicates that Moore attacked the Council's decision on the grounds of insufficient evidence and in the opinion of Justice Jones, concurring in the result, which includes the following:
"Certainly, it cannot be denied that the circuit court's general jurisdiction to try issues of fraud, collusion, or arbitrariness *513 may be invoked, including a claim that the mayor, sitting and voting as a member of the city council, had a fixed opinion as to the merits of Officer Moore's discharge. See Greenberg v. Alabama State Tenure Commission, 395 So.2d 1000 (Ala.1981), and Alabama High School Athletic Association v. Rose, 446 So.2d 1 (Ala.1984).
"In this case, the pleadings, taken along with the trial court's pretrial orders, show that the Plaintiff did not invoke the circuit court's jurisdiction on this expanded issue."
Id., at 716 (emphasis in original).
In the case at bar, the complaint included a count, based on 42 U.S.C. § 1983, reciting that plaintiffs had been denied their right to a hearing before an impartial tribunal. Thus, they invoked the circuit court's jurisdiction to decide constitutional issues broader than those allowed on certiorari, i.e., whether the inferior tribunal has made an apparent error of law. Ex parte Watkins, 268 Ala. 567, 109 So.2d 671 (1959). Because the due process claim involved matters concerning the hearings but outside the record of the hearings themselves, the trial court was within its discretion to admit evidence on this claim.
The trial court, after hearing the evidence ore tenus, entered the following among its findings of fact in support of its judgment:
"Hearings occurred before the Personnel Board of the city wherein the plaintiffs were represented by counsel and prosecuted by Assistant City Attorney, E. Cantey Cooper. The Personnel Board was composed of the City Attorney who was the immediate supervisor of Mr. Cooper and two other persons from city administration.
"Following an evidentiary hearing the Personnel Board affirmed the action of the Chief of the fire department in firing the plaintiffs. The dismissals were then appealed to the city council.
"At the hearing before the city council Mr. E. Cantey Cooper, Assistant City Attorney, again acted as prosecutor and [also] acted in the ... role of legal advisor to the City Council.
"Before the hearings at the City Council level one of the members of the council stated publicly that the City Council would vote to affirm any action taken by the mayor or personnel board to dismiss or discipline any of the persons involved in the labor strike."
Based on these findings, the trial court entered the following conclusion of law:
"The foregoing combination of occurrences, to wit: the participation of Mr. E. Cantey Cooper in all proceedings both as advisor and prosecutor; the statement of intent by the councilman; and the participation of Mr. E. Cantey Cooper in the wording of the council's findings convey this court to the conclusion that the proceedings undertaken to analyze the discharge of the plaintiffs in this case did not afford the plaintiffs [due process as] guaranteed by the United States Constitution."
Regarding Cooper's combination of functions, we hesitate to affirm that this is a violation of due process. The United States Supreme Court has held that it is not unconstitutional to combine investigative and adjudicative functions in one body. Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). To combine prosecutorial and adjudicative functions is a more suspect practice. The trial court quoted from Gonzales v. McEuen, 435 F.Supp. 460, 464-65 (C.D.Cal.1977), for its holding that the dual roles of the attorneys "as prosecutors for the Administration and as legal advisors to the Board ... places defendants' attorneys in a position of intolerable prominence and influence." True, in that case the Board members were named as defendants individually and the attorney prosecuting before the Board was defending the Board members in court, but the broader principle is that if an adjudicating body is looking to its attorney for advice while that attorney is prosecuting a case, the possibility for improper influence renders the practice suspect.
*514 We are not prepared to hold that, as a matter of law, Cooper's relationship to the city attorney rendered the Personnel Board a biased decisionmaker or that his advice to the Council so influenced that body as to violate due process. It is true, however, that his consultations with the city attorney during the personnel board hearing and his advice to the City Council raised at least an appearance of unfairness. "Not only is a biased decisionmaker constitutionally unacceptable but `our system of law has always endeavored to prevent even the probability of unfairness.'" Withrow v. Larkin, supra, 421 U.S. at 47, 95 S.Ct. at 1464, 43 L.Ed.2d at 723, quoting In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). See Chandler v. City of Lanett, 424 So.2d 1307 (Ala.1982).
Both Biles and Richard Cantrell, another fireman who was disciplined, testified that during the personnel board hearing Cooper was conferring and whispering with the members of the personnel committee. Jane Mabry, one of the City Council members, testified that on occasion the Council took Cooper's advice over that of the attorney representing Biles and Coleman at the time. John Glenn, the chairman of the City Council, testified in regard to the advice sought from Cooper during the hearing that he (Glenn) did not know the difference between substantive and procedural matters.
The statement by Glenn that the City Council would uphold whatever disciplinary action the mayor took was evidence of an even more serious violation of due process. See Chandler v. City of Lanett, supra. The fact that Glenn exhibited such prejudgment was shown by more evidence than just the tape made by the radio reporter. Several council members and the president of the firefighters' union all testified that they saw Glenn on television making similar statements. The City, in its arguments, stresses that Biles and Coleman received all the usually cited elements of due process: notice, opportunity to be heard, right to cross-examine adverse witnesses and bring witnesses of one's own, and a statement of reasons for the decision. The element that is missing from this list, without which the others are in vain, is an impartial tribunal. Withrow v. Larkin, supra.
Alternatively, the City argues that even if the City Council was not an impartial tribunal, Biles and Coleman received a fair hearing before an impartial tribunal, the Personnel Board, and so their right to due process was satisfied at that stage. Winnick v. Manning, 460 F.2d 545 (2d Cir. 1972).
The answer to this argument, beyond the trial court's finding that Cooper's dual role contributed to the failure of due process, is that the city's own procedures specify that the final decision is that of the City Council. Because the City extended this appeal to the City Council as a matter of right, it is an integral part of the procedure for terminating the employment of city employees and cannot be conceptually separated from the Personnel Board hearing, as the City would have us do.
The City argues that the rule of necessity applies because there was no other forum to hear the dispute over the termination of the firefighters. Evans v. Gore, 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887 (1920); Duplantier v. United States, 606 F.2d 654 (5th Cir.1979); and Mayor of City of Everett v. Superior Court, 324 Mass. 144, 85 N.E.2d 214 (1949). This Court has held that, in spite of the lack of an alternative tribunal, a writ of mandamus would issue to prevent a biased board from hearing a case:
"That the rule of disqualification applicable to judges extends also to every tribunal exercising judicial or quasi-judicial functions is established by the decided weight of authority....
"....
"It may be gathered from all the authorities that the courts very generally agreed that of course the rule of disqualification is the paramount policy, and is only to yield when the necessity is so great and overwhelming that there may not be an entire failure of justice....

*515 The opposition to the doctrine of necessity insists that it were better the question be delayed until the omission be remedied by legislative enactment....
"The policy of the rule of disqualification is of paramount importance, and if it is to yield in any case it is only when there exists therefor a very great necessity to prevent a failure of justice."
State ex rel. Miller v. Aldridge, 212 Ala. 660, 662-63, 103 So. 835, 836-38 (1925). The decision of the trial court that plaintiffs were denied their right to a hearing before an impartial tribunal is not due to be overturned on the basis of the rule of necessity.
Finally, the City argues that the trial court should not have ordered reinstatement and back pay, but should have remanded for a hearing that comported with due process. The proper remedy under § 1983, however, is to return the plaintiffs to the position in which they would have been if the violation of their rights had not occurred. Garrett v. Mathews, 474 F.Supp. 594 (N.D.Ala.1979). Without a hearing of some sort, the plaintiffs could not have been terminated. Cleveland Bd. of Educ. v. Loudermill, supra. Because the trial court found that the denial of due process began at the Personnel Board hearing, the remedy of reinstatement and back pay appropriately places the plaintiffs in the position they were in before the violation of their rights occurred.
The court below made findings of fact that the assistant city attorney acted in a dual role as prosecutor and as advisor to the adjudicating bodies, and that one of the City Council members stated before the hearing that the City Council would uphold any personnel action by the mayor. The court made findings of facts from the testimony it heard, sitting without a jury.
"It is axiomatic that in a case tried ore tenus there is a strong presumption that the trial court's findings of fact are correct. Those findings will not be disturbed on appeal unless they are clearly erroneous or [manifestly unjust]."
Thompson v. Hartford Accident and Indemnity Co., 460 So.2d 1264, 1267 (Ala. 1984). The trial court concluded from these facts that plaintiffs were deprived of their right to due process of law.
After reviewing the record in light of the presumption in favor of the findings of the trial court, we cannot conclude that the trial court committed error in making its findings and entering judgment on those findings.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
AFFIRMED.
MADDOX, FAULKNER, ALMON and ADAMS, JJ., concur.
HOUSTON, J., concurs in the result.
JONES, J., concurs specially with opinion issued February 14, 1986.
JONES, Justice (concurring specially).
I am in substantial agreement with this well written, well reasoned opinion. I concur specially to emphasize one particular point. I would hold as a matter of law that, where one having a property interest in the subject matter of the administrative hearing is subjected to an adversary who serves both as prosecutor and as advisor to the hearing board or tribunal, he is entitled to challenge any adverse result of the hearing on due process grounds, unless a de novo due process appeal is available to him. I would so hold on state law grounds (i.e., the due process provisions of our State Constitution) whether or not such a holding is mandated by the Federal Constitution.
NOTES
[1] Biles and Coleman do not argue that they were deprived of their right to a pre-termination hearing. See Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). They were paid until the personnel committee ratified the fire chief's action, so we do not decide the case on this ground.
[2] Citing Code 1975, § 11-43-143, and Adams v. Warden, 422 So.2d 787 (Ala.Civ.App.1982).