510 So.2d 176 (1987)
Ruth A. KIRBY
v.
WILLIAMSON OIL COMPANY.
85-301.
Supreme Court of Alabama.
June 19, 1987.
*177 Joe R. Whatley, Jr., and Frances Heidt of Falkenberry, Whatley & Heidt, Birmingham, for appellant.
Joe C. Carroll, Birmingham, for appellee.
STEAGALL, Justice.
Ruth Ann Kirby appeals from a summary judgment granted in favor of Williamson Oil Company on her breach of employment contract claim and from a directed verdict granted in favor of Williamson Oil Company on her slander claim. We affirm.
Williamson Oil owns a chain of convenience stores. Kirby was employed by Williamson Oil on two separate occasions. The first occasion was during the months of August and September of 1982, when she was hired by Gary Jones, vice president of Williamson Oil. Kirby was given a routine polygraph examination by Williamson Oil, which she passed. She voluntarily quit her job at Williamson Oil and went to work for another convenience store for approximately four months. Kirby was unemployed from January until July of 1983, when she began her second period of employment with Williamson Oil. She was interviewed for the job by Gary Jones and passed another routine polygraph examination given by Mike Terrall, a Williamson Oil employee. Kirby was re-hired as a cashier in July 1983 and promoted to store manager in August 1983.
In October 1983, Kirby was notified by Gary Jones of an inventory shortage, and she and other store employees were required to take a polygraph examination. The examination was given by David Neu, security officer for Williamson Oil. Kirby passed the examination and was cleared at that time of any wrongdoing related to the inventory shortages. In August 1984, Kirby's employment with Williamson Oil was terminated by Gary Jones due to inventory shortages over a period of one year.
*178 Kirby testified that when she was hired by Williamson Oil in 1982, she was told that she would have a 90-day probationary period, and that if she successfully completed that period, she would not be discharged from employment except for cause or good reason. Kirby asserts that the employee policy manual, which sets forth "minimum acceptable performance standards," constitutes an employment contract, especially considering the language used in the first paragraph of the manual. The employment policy manual begins as follows:
"Welcome to Williamson Oil Company. You are a valuable addition to this company. We look forward to a long and pleasant association with you."
After Kirby's employment with Williamson Oil had been terminated, her half-sister, Sheila Jones, continued to work for Williamson Oil as a cashier at its store in Bynum, Alabama. A robbery occurred at this store on September 12, 1984, while Jones was working. Jones telephoned Kirby late that night to report the robbery. Although Kirby no longer worked for Williamson Oil, she instructed Jones on the procedure to follow, and Kirby called the law enforcement officials and Gary Jones, vice president of Williamson Oil. Kirby then drove to the store and sat in her car in front of the store. The store manager and the law enforcement officers were inside the store when Kirby arrived, and David Neu arrived shortly thereafter, speaking to Kirby as he went inside.
Houston Dodgen, a deputy sheriff for Calhoun County, investigated the robbery of the store. A day or two after the robbery, Deputy Dodgen was contacted by Neu and informed that Neu had a suspect in the robbery. Deputy Dodgen and Neu had a private conversation in Neu's office at Williamson Oil, during which Neu told Deputy Dodgen that he suspected Kirby and her sister, Sheila Jones. Neu stated that his reasons for his suspicions were that Kirby had been outside the store after the robbery; she had been discharged from employment at Williamson Oil; there had been some problems with collecting on checks from Kirby; and Kirby and Jones had low I.Q's.
At the time of the conversation with Neu, Deputy Dodgen's son was married to Kirby's daughter. Deputy Dodgen later told his son and daughter-in-law about Neu's statements. The son and daughter-in-law related the statements to Kirby, whereupon Kirby called Deputy Dodgen and he also informed her of Neu's statements.

Summary Judgment
Kirby argues that she was a permanent employee and that she could be terminated only for cause. She relies upon the employee manual as support for this argument and cites City of Huntsville v. Biles, 489 So.2d 509 (Ala.1986), as authority. In City of Huntsville, an employee handbook was held to create a property right for the employees in their employment. The handbook specifically stated that "a permanent employee is hired on a full-time permanent basis subject to the regulations concerning probationary period, termination for cause, and retirement." City of Huntsville v. Biles, supra, at 512.
The Williamson Oil manual does not contain a provision similar to the one in City of Huntsville. Nor does the manual contain an agreement specifying a definite period of employment. We find that the manual does not create a binding employment agreement, and particularly not one providing for permanent employment or employment for a specific period, and, therefore, that Kirby was an employee at will. However, even if Kirby were not an employee at will, according to her own testimony she could have been terminated for cause. The record clearly established that Kirby's employment was terminated due to her failure to control the inventory entrusted to her.
The trial court properly granted summary judgment for Williamson Oil on the breach of contract claim.

Directed Verdict
The trial court held that David Neu's statements to Deputy Dodgen were made in the course of an investigation of a criminal *179 offense, and, thus, that they were conditionally privileged; therefore, the court held, actual malice on the part of Neu must be shown as a part of the plaintiff's slander case. The trial court, finding no evidence of malice, granted a directed verdict against the slander claim.
The test for determining whether a communicating party has a conditional or a qualified privilege is as follows:
"`Where a party makes a communication, and such communication is prompted by duty owed either to the public or to a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest, the communication is privileged, if made in good faith and without actual malice. * * * The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is social or moral in its nature and defendant in good faith believes he is acting in pursuance thereof, although in fact he is mistaken.'" Willis v. Demopolis Nursing Home, Inc., 336 So.2d 1117, 1120 (Ala.1976), quoting Berry v. City of New York Ins. Co., 210 Ala. 369, 371, 98 So. 290, 292 (1923).
The issue of whether a communication is conditionally privileged is a question of law. Willis v. Demopolis Nursing Home, Inc., supra.
In the instant case, the evidence requires a finding that Neu's statements to Deputy Dodgen were prompted by a duty owed by Neu to Williamson Oil as its security officer, and that the statements were made to a person having a corresponding duty because Deputy Dodgen was a law enforcement official investigating the robbery at Williamson Oil. Accordingly, Neu's statements were conditionally privileged, and Kirby must show actual malice on the part of Neu in order to recover for slander. See Mead Corp. v. Hicks, 448 So.2d 308 (Ala.1983).
"Actual malice `... may be shown by evidence of previous ill will, hostility, threats, rivalry, other actions, former libels or slanders, and the like, emanating from the defendant, or by the violence of the defendant's language, the mode and extent of publication, and the like.'"
Willis v. Demopolis Nursing Home, Inc., supra, at 1120, quoting Kenney v. Gurley, 208 Ala. 623, 626, 95 So. 34, 37 (1923).
As evidence of malice, Kirby cites the following three alleged statements and/or acts by Neu: (1) Neu had once accused Kirby of being involved in a store inventory shortage, though he had later cleared her of involvement when he gave her a polygraph examination; (2) Neu was involved in Kirby's termination from Williamson Oil; and (3) Neu made false statements to Deputy Dodgen about Kirby's financial condition and about her I.Q.
After reviewing the entire record, we find that the evidence regarding these three alleged statements or acts does not show malice on the part of Neu. Kirby testified that Neu administered the polygraph examination that she took in October 1983 concerning inventory shortages and that, during this examination, he accused her of knowing about the shortages. However, she also testified that Neu cleared her of the charges after he determined that she passed the examination. Kirby also testified that Neu was not her supervisor and that she had never had any arguments or disagreements with Neu. The record shows that Neu's only involvement in Kirby's termination was that his signature was on a personnel termination form which stated Kirby's name, the store where she worked, the date of termination, and the reason for termination, i.e., "failure to control inventory." Kirby testified that her termination was made personally by Gary Jones, who had also hired her. The record also disclosed that Kirby had promised Gary Jones that she would pay for checks that were returned "not sufficient funds" which her sister, Sheila Jones, had written, if Sheila did not pay.
The foregoing evidence shows only that Neu was performing his duties as an employee of Williamson Oil and that, in so doing, he reported to a law enforcement official the basis for his suspicions. His *180 statements were made in a private conversation with a law enforcement official and, unfortunately, that official released this information to others, including Kirby.
A directed verdict is properly granted if the evidence does not support every element of the claim. Lucky Manufacturing Co. v. Activation, Inc., 406 So.2d 900 (Ala. 1981). The trial court properly directed a verdict for Williamson Oil on the slander claim.
AFFIRMED.
MADDOX, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
JONES, J., concurs in part and dissents in part.
JONES, Justice (concurring in part and dissenting in part).
I concur on the wrongful-discharge issue and dissent on the slander issue. While I agree that the statements alleged to be slanderous were conditionally privileged, I am of the opinion that the circumstances of this case make out a triable issue of fact on the requisite element of malice.