PER CURIAM.
Glen Demastus was employed by the city of Phil Campbell (city or Phil Campbell) as its chief of police. In November 1986 the Phil Campbell city council (council) voted to relieve Demastus of his duties as chief of police. In March 1987 Demastus filed a complaint in the Franklin Circuit Court wherein he alleged that he was terminated from his position without due process of law.
In his motion for summary judgment filed with the trial court, Demastus contends that members of the council had preconceived notions about his continued employment, which is in direct contradiction with the ideas and values of the Constitution and due process of law.
The city also filed a motion for summary judgment. After consideration of the oral arguments made by counsel and the pleadings, affidavits, and depositions filed by the parties, the trial court issued an order. The parties consented and stipulated for the trial court to render a decision based upon the depositions and affidavits previously on file at the city’s dismissal hearing.
In its order the trial court stated that the issue for determination is whether Phil Campbell denied Demastus procedural due process and equal protection of the law when it dismissed him in November 1986. The trial court determined that Demastus had received a fair hearing before an impartial tribunal, granted the city’s motion for summary judgment, and denied Demas-tus’s motion for summary judgment. De-mastus appeals.
Our review of the record reveals that on or about October 7, 1986, the local newspapers published articles quoting an assistant United States attorney’s statements that Demastus had taken payoffs and bribes from the Dawson gang while serving as sheriff of Franklin County from 1975 until 1979. At its regular meeting on October 7, 1986, the council authorized the mayor to write a letter to Demastus requesting his resignation as chief of police by November 1, 1986. The mayor wrote such a letter to Demastus on October 8, 1986.
By letter dated October 31, 1986, Demas-tus was informed that his dismissal as chief of police would be considered at the November 1, 1986, council meeting. He was invited to be present at the meeting and was told that he would be given an opportunity to address the council and/or offer evidence.
Demastus was present at the November 1, 1986, council meeting and refused to resign. After discussion, the council voted to relieve Demastus of his duties as chief of police. Demastus requested a hearing on his dismissal. The hearing was scheduled for November 18,1986, at the regularly scheduled council meeting.
Demastus and his attorney appeared before the council on November 18, 1986. After the hearing, the council voted to reaffirm his termination as chief of police effective November 1, 1986, “for the reason of conduct detrimental to the good order and discipline of the Phil Campbell Police Department and for the best interest of the Town of Phil Campbell.” Thereafter, De-mastus filed his complaint, alleging that he was terminated without due process of law.
Demastus contends that the trial court erred when it determined that he received a fair dismissal hearing with proper notice and before an impartial tribunal. Demas-tus also contends that, even if the dismissal hearing was proper, he could not be dismissed for criminal activity he was allegedly involved in before his present tenure as chief of police for the city.
As to the issue of the adequacy of the dismissal hearing, we first address the question of proper notice. Demastus insists that he was unaware of why the city council had scheduled a termination hearing for him, yet at the hearing he responded to questioning on this matter as follows:
“Q. When you received this letter, were you aware of why they wanted your resignation?
“A. Yes.
“Q. Well there wasn’t any question in your mind that’s why they wanted your resignation, was there, Glen?
“A. That’s right.”
*1361 The record further shows that Demastus had also admitted to some council members that he was aware of a reason for his proposed dismissal. In Hayden v. Town of Riverside, 351 So.2d 577 (Ala.Civ.App. 1977), we held that a discharged chief of police had been given sufficient notice of the reasons for dissatisfaction (of him as chief of police) where prior discussions had been had regarding the problem giving rise to his dismissal. The employee’s obvious knowledge of the reason(s) for his termination cured the defect or omission of specific language in the notice.
Demastus’s contention that the hearing lacked impartiality is likewise without merit. Appellant cites Chandler v. City of Lanett, 424 So.2d 1307 (Ala.1982), which holds that when a city council had preconceived notions concerning a police officer’s dismissal hearing and had decided that the police officer was guilty of the charges against him and these charges would require dismissal, then they were prejudiced as to the truth of the charges against that police officer. Such is not the situation in the case before us because Demastus had admitted that he testified before a federal grand jury in Birmingham, Alabama, under immunity from prosecution. A recent newspaper article in The Florence Times concerning Demastus’s alleged wrongdoing with the Dawson gang while he was sheriff of Franklin County, Alabama, apparently precipitated the city’s termination proceedings against Demastus. So, the city was not making a determination of Demastus’s guilt or innocence regarding his alleged wrongdoing while sheriff but rather the city moved for his dismissal based upon the notoriety of his involvement, whatever it may have been, with the Dawson gang. This action was within its authority as the city council.
This leads us to the final contention of Demastus: his dismissal by the city for alleged criminal activity before his present appointment as chief of police of the city. The pertinent question here is whether De-mastus was under a good faith duty to disclose information to the city concerning the fact that he had previously testified before a federal grand jury under immunity from prosecution concerning his involvement in and knowledge of criminal activity while he was sheriff of Franklin County, Alabama.
The position of chief of police of any city is best served when the person appointed possesses character and fitness which place him above reproach, particularly in regard to involvement, even if peripherally, in criminal activity. He must himself abide by the law if he is to enforce its provisions on others. Equally important is his obligation to disclose to the city any facts in his past which could link him with criminal activity. His failure to do so creates the potential for erosion of public confidence in his character and honesty and diminishes or destroys his effectiveness to continue in this position. His failure to disclose is magnified by his continued concealment of such activity during his tenure as chief of police. We are satisfied that his failure to disclose and his continued concealment of his connection with the criminal element in this community come within the purview of malfeasance. Malfeasance is defined as a “[cjomprehensive term including any wrongful conduct that affects, interrupts or interferes with the performance of official duties.” Black’s Law Dictionary 862 (5th ed. 1979). We agree with the trial court’s judgment of the city’s action that such malfeasance is sufficient ground for dismissal under § 11-43-160, Code 1975. The trial court therefore correctly determined that no issue of material fact existed and that its grant of summary judgment in favor of the city was correct. It is therefore affirmed.
AFFIRMED.
All the Judges concur.