BRADLEY, Presiding Judge.
This is an appeal from an administrative agency’s partial denial of a disability pension.
Howard Hughes worked for Jefferson County from 1967 until 1982. In August of 1982 Hughes was injured in an automobile accident in the course of his duties as a building inspector. Hughes subsequently applied for a total disability pension due to injuries suffered in the accident. On April 21, 1983 the Pension Board of the General Retirement System for Employees of Jefferson County (the Board) approved the application, to be effective after Hughes’s separation from county employment. Approval was subject to reevaluation in six months.
Two months later, Hughes personally appeared before the Board to request that his pension benefits be implemented immediately. The Board informed Hughes that pension benefits could not be paid until he was separated from county employment. At this time (June 1983), Hughes was still receiving his full salary because of accrued vacation and sick pay, supplemented by workmen’s compensation benefits. The Board also told Hughes his disability pension benefits, when due, would be reduced *544 by the amount of workmen’s compensation benefits he was receiving at that time.
At the Board’s monthly meeting in October 1983, the Board’s accountant reported that Hughes had almost exhausted his vacation leave and sick leave. Coincidentally, October marked the end of six months since the Board’s approval of Hughes’s application, making the application subject to reevaluation at that time. The Board instructed its secretary to refer Hughes to the Board’s medical advisor for reevaluation before making any payments to Hughes. The medical advisor examined Hughes, reviewed the medical records compiled since the injury, and reported to the Board that Hughes had a thirty percent permanent impairment. The Board then determined Hughes was entitled to a thirty percent disability pension. However, the Board refused to pay Hughes this amount because he was receiving workmen’s compensation benefits in excess of the amount due from the pension.
Meanwhile, Hughes elected to take a leave of absence without pay beginning in October 1983. The Board’s rules and regulations limit a leave of absence without pay to one year. During this leave of absence Hughes remained in county employment. At the end of the one year leave of absence, the Board notified Hughes and sent him a new application for pension benefits. Hughes then renewed his request for a one hundred percent disability pension. On December 14, 1984 Hughes settled his work-, men’s compensation claim against the county. At the Board’s next monthly meeting it approved a thirty percent disability pension to be paid to Hughes retroactive to December 14, 1984. The Board based this action on its interpretation of Section 17 of Act No. 497, Acts of Alabama 1965, the act which created the Board. The Board further determined Hughes should begin receiving a superannuation (regular) pension on his sixtieth birthday.
Hughes filed this suit in May 1985, seeking a declaration of his right to a one hundred percent disability pension. The circuit court transferred the case to its equity division pursuant to a motion by the Board. Both parties then filed motions for summary judgment, supported by documentary evidence. On March 17, 1988 the trial court granted the Board's summary judgment motion in a detailed and well-reasoned order. Hughes appealed to the Alabama Supreme Court. The supreme court transferred the case to this court pursuant to section 12-3-10, Code 1975, because it is an appeal from an administrative agency. We affirm.
Judicial review of administrative acts and decisions is limited to questions of whether the administrative agency acted within its statutory or constitutional powers, whether its actions are reasonable, and whether its order is supported by substantial evidence. McRae v. General Retirement System for Employees of Jefferson County, 536 So.2d 71 (Ala.Civ.App.1988). If reasonable minds differ as to an administrative agency’s action or there is a reasonable basis for its decision, the action is conclusive, and we will not substitute our judgment for that of the administrative agency. McRae; State Oil & Gas Board v. Anderson, 510 So.2d 250 (Ala.Civ.App.1987).
Hughes contends the Board acted unreasonably in refusing to pay him disability pension benefits while he was drawing workmen’s compensation. We disagree. Act No. 497, Acts of Alabama 1965, created the Pension Board and governs its actions. Section 17 of said Act provides:
“Any amount otherwise payable by the retirement system to a retired member for any month or part thereof on account of retirement or disability shall be reduced by the amount, if any, paid or payable to such beneficiary for the same month or part thereof by the County on account of or by reason of employment of such retired member during such months by the County.”
The Board construed workmen’s compensation benefits to be an amount paid on account of or by reason of the employment of Hughes by the county. We cannot say this construction is unreasonable. Hughes argues that Section 17 refers only to actual salary paid to an employee by reason of accrued sick pay, vacation pay, and other *545 “leave with pay” provisions. He correctly notes that Act No. 497 predates the application of the Workmen’s Compensation Act to county employees by some ten years. However, his construction would render Section 17 meaningless.
Section 12(d) of Act No. 497, as added by Act No. 926, Acts of Alabama 1975, provides that payment of disability pension benefits does not commence until the disabled employee ceases to receive his salary. Salary in this case includes all the “leave with pay” provisions which Hughes contends are the sole reason for Section 17. Under Hughes’s analysis, Section 12(d) renders Section 17 wholly superfluous. This cannot have been the legislature’s intent. While the legislature could not have specifically intended Section 17 to apply to an award of workmen’s compensation benefits, the language of the statute is broad enough to encompass such benefits. During the period in question, Hughes was receiving $174 per week in workmen’s compensation benefits. The Board had awarded him a thirty percent disability pension of $380.33 per month. Applying Section 17, the Board reduced this award by the amount of the workmen’s compensation benefits. Because the monthly workmen’s compensation benefits exceeded the monthly pension benefits, the Board properly refused to pay Hughes the pension benefits. We agree with the Board that workmen’s compensation benefits are an amount paid by reason of employment by the county for purposes of Section 17 of Act No. 497.
Hughes also asserts that the Board erred in refusing to grant him a one hundred percent disability pension because Act No. 497 contains an “occupational” disability standard. An award of disability benefits may be based on an occupational disability, meaning the inability to perform the duties of a particular occupation, or a nonoccupational disability, which requires the inability to perform the duties of any occupation. Helms v. Monsanto Co., 728 F.2d 1416 (11th Cir.1984). Section 12(b) of Act No. 497 provides that a county employee will be awarded a disability pension if “in the opinion of the Board and the Medical Advisor he is incapacitated for further performance of his duties” by reason of a job-related injury. Hughes maintains that the phrase “of his duties” requires the Board to apply an occupational standard. Applying an occupational disability standard, the Board could only determine whether Hughes could perform all his duties as a building inspector. If not, he is entitled to a one hundred percent pension.
We reject this construction. As the trial court noted, Hughes’s construction of Section 12(b) fails to take into account Section 12(c) of the act. That section provides:
“ ‘(c) Partial Disability. In cases of partial disability arising under either (a) or (b) of this Section, the Board and the Medical Advisor shall determine the percentage of disability suffered and the member shall be entitled to that proportion of the amount which would have been payable to him if totally disabled which his percentage of disability is of total disability.’ ”
If the Board must apply an occupational disability standard, it could never award a partial disability pension. The only question to be asked under an occupational disability test is whether the injured employee can perform all of the duties of his particular job. If he cannot, he is disabled. In contrast, Act No. 497 provides for a two-step analysis. First, the Board must determine whether an employee can perform all the duties of his former work. If he cannot, he is at least partially disabled. The Board must then determine the percentage of disability which the employee suffers. Hughes asserts that Section 12(c) refers only to those persons who retain the ability to perform their former duties at a reduced capacity. Section 12(c), however, makes no mention of an employee’s duties. It provides for a general nonoccupational test of the percentage of disability suffered by the employee.
Here, the Board’s medical advisor opined that Hughes suffered a thirty percent disability. The Board properly complied with Section 12(c) in awarding a thirty percent disability pension based on this opinion. Section 12(c) requires the Board *546 to solicit the medical advisor’s opinion, and we cannot say the Board acted arbitrarily or unreasonably in relying on that opinion to determine the percentage of disability. The Act does not require the Board to award a one hundred percent disability pension to every person who is unable to return to his former job.
Finally, Hughes asserts that the Board’s decision is tainted because it relied on the advice of an assistant county attorney who was at the same time representing the county in the workmen’s compensation suit filed by Hughes. In City of Huntsville v. Biles, 489 So.2d 509 (Ala.1986), the Alabama Supreme Court held that the combination of prosecutorial and adjudicative functions in one office is a “suspect practice.” There, the city attorney who criminally prosecuted several city firemen also advised the personnel board and the city council during proceedings involving the firemen. Despite the court’s statement that this practice was “suspect,” the court refused to hold that the city attorney's actions violated due process. The actions of the assistant county attorney in this case are far less suspect. He never acted as a prosecutor. He was not a member of the Pension Board, nor did he attend every meeting of the Board. Most importantly, his advice to the Board was legally correct. Therefore, the Board’s decision is in no way tainted by the fact it followed his advice.
We find no error in the trial court’s decision. The judgment of the trial court is affirmed.
AFFIRMED.
HOLMES and INGRAM, JJ., concur.