Dorothy REEVES,
Employee/Appellant/Cross–Respondent,

v.

MIDWESTERN MORTGAGE
COMPANY, Employer/Respondent/Cross–
Appellant,

and

Treasurer of Missouri, as Custodian
of the Second Injury Fund,
Additional Party.

Nos. 69496, 69497.

Missouri Court of Appeals,
Eastern District,
Division Five.

Sept. 17, 1996.

Mark E. Moreland, St. Louis, for appellant.

James J. Sievers, Clayton, for Midwestern Mortg.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Jeffrey K. Elnicki, Assistant Attorney General, St. Louis, for Treasurer of Mo.

CRANDALL, Judge.

Employee, Dorothy Reeves, and employer, Midwestern Mortgage Company, appeal from the decision of the Labor and Industrial Relations Commission awarding workers' compensation benefits.[1] We affirm.

In October 1991, Dorothy Reeves (claimant) was employed by Midwestern Mortgage Company (employer) as a mortgage loan officer. She was approximately 52 years of age. She completed the tenth grade; and in 1980 she obtained her GED. She then obtained her real estate license and real estate appraisal certificate. Her duties as a mortgage loan officer involved taking information from prospective home buyers who were applying for financing, processing the loan application, and then closing the loan. She also contacted real estate agents to secure business for employer. She was paid a commission on each loan she closed.

On October 1, 1991, while driving to a real estate office to pick up some paper work related to her employment, claimant was stopped at an intersection when her automobile was struck from behind and pushed into a pickup truck stopped in front of her. Shortly after the accident, claimant experienced pain in her neck and back. On October 3, she sought treatment from her physician, Dr. Hoffman, who prescribed among other things physical therapy. On October 11, because she was experiencing intense pain, claimant went to the emergency room where the attending physician diagnosed her condition as head and neck trauma. In December 1991, Dr. Hoffman noted that claimant was confused, lacked motivation, and was easily distracted.

Dr. Zimmerman, a neurologist to whom claimant was referred by Dr. Hoffman, diagnosed chronic pain syndrome, a cervical sprain, and severe depression. In March 1992, Dr. Zimmerman recommended claimant not return to work for an additional six weeks. In May 1994, Dr. Zimmerman stated that claimant was unable to work in any setting in the open labor market because she was unable to concentrate and exhibited poor memory.

Dr. Liss, a psychiatrist, diagnosed claimant's condition as post traumatic stress disorder caused by the automobile accident. The syndrome was characterized by anxiety and depression as well as confusion and indecision. In Dr. Liss's opinion, because claimant exhibited poor memory and concentration, she would never be able to return to work. Peter Florian, a psychologist who worked in conjunction with Dr. Liss, made similar findings.

---

1. The Labor and Industrial Relations Commission found no Second Injury Fund liability for permanent disability benefits. None of the parties challenge this decision on appeal. Although the Second Injury Fund submitted a brief asserting the correctness of the decision, the Second Injury Fund did not file a notice of appeal and is not a party to this appeal.

Dr. Deckert, a chiropractor, treated claimant for a concussion, cervical sprain, and herniated disc.

Peggy Goldfader, a psychologist who administered a battery of neuropsychological tests to claimant, found impairment of claimant's motor and cognitive abilities and attributed the impairment to post-concussion syndrome. Ms. Goldfader testified that claimant was in need of supportive counseling and that she would "not be able to function in a competitive environment anywhere near to where she had been functioning before." Ms. Goldfader's report also noted that it was difficult to explain claimant's "severely, almost globally, impaired test performance in terms of a mild head injury...."

Dr. Rosenbaum, a psychiatrist retained by employer, stated that claimant was depressed and had experienced some type of vascular episode or stroke related to hypertension. He also stated that at the time he examined her, her ability to work in the open market was a "little shaky;" but that she would eventually be able to return to work.

Dr. Stillings, another psychiatrist retained by employer, examined claimant in September 1994. In his opinion, claimant was suffering from hypochondriasis. He determined that there was a preexisting psychiatric disorder unrelated to the accident which he rated as a 10 percent preexisting permanent partial disability. He felt claimant was able to work.

Claimant testified that prior to the accident she was in good physical and mental health; but that after the accident she was unable to work. Claimant reported that after the accident she attempted to work on loan applications and attended some closings but that she was unable to think and communicate clearly and lacked the energy to work. In the past, claimant had experienced anxiety when she was divorced in 1979 and when a biopsy was performed in 1989. On both occasions, she was prescribed antidepressant drugs, which she took for a brief period of time.

The Administrative Law Judge (ALJ) found that claimant was temporarily and totally disabled from the date of the accident until April 19, 1992 and awarded 28⅞ weeks of disability benefits. The ALJ also found that claimant suffered a five percent disability of the body as a whole referable to the neck sprain and a 17½ percent disability of the body as a whole referable to the resulting aggravation of her preexisting psychological condition. The ALJ further found that claimant was disabled; but her "demonstrated ability at the administrative hearing to recall details ... in a coherent manner and with added emphasis where necessary" indicated that her disability was not permanent and contradicted Dr. Liss's report that she was unable to work in any setting in the open labor market. The ALJ awarded claimant certain medical expenses; but disallowed the medical expenses for Dr. Liss and Peter Florian because he found the treatment by them was not reasonable and necessary. The ALJ did not impose liability on the Second Injury Fund on the ground that there was no disability preexisting the work-related injury. The Labor and Industrial Relations Commission (Commission) affirmed the ALJ's decision and adopted the ALJ's findings of fact and conclusions of law.

 Our review of the Commission's decision is limited to questions of law. § 287.495, RSMo(1994). We must affirm the Commission's decision if, after a review of the entire record in the light most favorable to the finding, we believe the award is supported by competent and substantial evidence. *Thornton v. Haas Bakery*, 858 S.W.2d 831, 833 (Mo.App.1993). In making this determination, evidence which might support findings different from those of the Commission must be disregarded. *Id.* Questions of fact are for the Commission and we may not substitute our judgment on the evidence for that of the Commission's, even if the evidence could support a contrary finding. *Id.* The weight to be given evidence rests with the Commission and it alone determines the credibility of witnesses. *Id.* Where competent evidence is conflicting, resolution is for the Commission and its choice is binding upon this court. *Id.*

In her first point, claimant contends the Commission's award of permanent partial disability was not supported by competent

and substantial evidence, because the overwhelming weight of the evidence established that she was permanently and totally disabled. In her second point, claimant charges error in the Commission's refusal to award her the medical expenses incurred for treatment furnished by Dr. Liss and Peter Florian. We have reviewed the record and find that the Commission's denial of permanent total disability benefits and of certain medical expenses was supported by competent and substantial evidence on the whole record. No error of law appears. An opinion on these points would have no precedential value. Claimant's first and second points are denied pursuant to Rule 84.16(b).

In its first point, employer contends the Commission's award of permanent partial disability was not supported by the evidence, because claimant failed to present expert testimony to establish the extent of her preexisting injury as a prerequisite to her recovering permanent partial disability benefits for a subsequent work-related injury. Employer relies on *Plaster v. Dayco Corp.,* 760 S.W.2d 911, 913 (Mo.App.1988) for the following proposition:

> Expert opinion evidence is necessary in order to prove the extent of a preexisting disability, so that such percentage can be evaluated against the disability percentage existing after the compensable injury, in order to determine what percentage of permanent partial disability is attributable to the job-related injury which is the basis for the worker's compensation claim....

We agree with employer that expert testimony is necessary when a preexisting disability is present and when the employee expects to recover permanent partial disability for the additional injury incurred as a result of a job-related injury. *See Goleman v. MCI Transporters,* 844 S.W.2d 463, 465–466 (Mo.App. W.D.1992). Given the facts of this case, however, that maxim is inapplicable. Here, claimant denied that she had any preexisting disability and sought permanent total disability. Her evidence reflected her posture in this case; and as a result, her physicians did not establish the percentage of any preexisting disability. Employer's examining physician, Dr. Stillings, however, did

determine there was a preexisting psychiatric condition which he rated as a 10 percent permanent partial disability. Thus, there was expert testimony regarding the extent of claimant's preexisting disability, albeit from employer's expert. The Commission was free to believe or to disbelieve any of the medical testimony and to arrive at its own conclusions regarding the percentage of claimant's preexisting disability. Employer's first point is denied.

In its third point, employer challenges the Commission's award of back temporary total disability and medical benefits because there was no prerequisite showing that claimant was unable to work after the accident. Employer points to the fact that after the accident claimant participated in loan closings for which she received compensation.

The definition of total disability is the inability to return to any employment and not merely the inability to return to the employment in which the employee was engaged at the time of the accident. *Phelps v. Jeff Wolk Const. Co.,* 803 S.W.2d 641, 645 (Mo.App.1991). The term "any employment" means any reasonable or normal employment or occupation. *Id.* Temporary disability awards are intended to cover a healing period. *Id.* Temporary total disability is only to be granted for the time prior to when the employee can return to work. *Id.*

The ALJ found the following:

[C]laimant was temporary [sic] and totally disabled from the date of the accident until April 19, 1992. This is a period of twenty eight and five sevenths weeks. The date of maximum medical improvement is based upon the diagnosis of Dr. Zimmerman who stated on March 9, 1992 the claimant would [be] able to return to work after an additional six weeks in which to recover from her cervical strain. Also Dr. Zimmerman was aware of the claimant's depression. This date of maximum medical improvement is based upon the diagnosis of Dr. Stillings who stated that although the claimant had a preexisting psychological condition the this [sic] condition did not prevent her from working.

The Commission's award of temporary total disability reflects careful consideration of the medical evidence regarding the period of time claimant was unable to work and the point in time she was capable of returning to work. There was competent and substantial evidence to support the Commission's award.

Employer's reliance on claimant's participating in closings after the accident does not, in and of itself, support the view that she was capable of working after the accident. Claimant testified that after the accident the reduction in her physical stamina and in her cognitive abilities prevented her from resuming the duties of her job and that her attempts to work proved unsuccessful. The fact that she tried to resume some activities connected with her job does not mitigate against finding that she was totally disabled for a period of time after the accident. To hold her attempts to work against claimant would tend to encourage idleness on the part of injured employees and to discourage injured employees from making any effort to return to employment for fear that any activity on their part might furnish evidence against their rights to compensation. Employer's third point is denied.

In its second and fourth points respectively, employer avers the Commission erred in failing to give proper weight to the evidence offered by Dr. Stillings and in admitting into evidence the narrative report of Dr. Deckert. We have reviewed the record and find that the Commission's decision was supported by competent and substantial evidence on the whole record. No error of law appears. An opinion on these points would have no precedential value. Employer's second and fourth points are denied pursuant to Rule 84.16(b).

The decision of the Commission is affirmed.

AHRENS, C.J., and CHARLES B. BLACKMAR, Senior Judge, concur.