Robert STONECIPHER, Appellant,

v.

POPLAR BLUFF R1 SCHOOL DISTRICT and Missouri United School Insurance Council, Respondents,

and

Treasurer of the State of Missouri, as Custodian of the Second Injury Fund, Respondent.

No. 27653.

Missouri Court of Appeals, Southern District, Division One.

Nov. 14, 2006.

Jeffrey P. Gault, Gault & Warner, LLC, Clayton, for appellant.

Mary Ann Lindsey, Robert W. Haeckel, Evans & Dixon L.L.C., St. Louis, for respondents Poplar Bluff R1 School District and Missouri United School Insurance Council.

Deborah A. Ledgerwood, Cape Girardeau, for respondent Second Injury Fund.

DANIEL E. SCOTT, Judge.

### Facts and Procedural History

On June 7, 2002, Robert Stonecipher (Claimant) was struck and knocked over by a swinging backhoe bucket while repairing a water line. He sought workers' compensation benefits from his employer (Employer [1]), and from the Second Injury Fund (Fund), which compensates injured employees when a current work-related injury combines with a prior disability to create an increased combined disability.

The case was tried to an administrative law judge (ALJ) in December 2004. Claimant and two lay witnesses testified in person, and nine experts testified by deposition. The ALJ ruled that Claimant suffered a 35% permanent partial disability (PPD) from the backhoe accident, consisting of 30% for his back injury and 5% for depression. The ALJ also found Employer liable for past temporary total disability (TTD), $48,886 in past medical expense, and future medical treatment as needed. Finally, the ALJ found that all of Claimant's prior and current disabilities combined to render him permanently and totally disabled (PTD), and Fund was liable for Claimant's remaining disability. In monetary terms, Employer owed Claimant $95,863 plus future medical treatment, and Fund owed Claimant $339 weekly. Claimant's remaining life expectancy was about 40 years.

Employer requested the Labor and Industrial Relations Commission (Commission) to review the ALJ's award against Employer. Fund did not seek review by or relief from the Commission; thus effectively conceding liability for, in all likelihood, most of the total award.[2] Besides

---

1. For convenience, we refer to Claimant's employer, the Poplar Bluff School District, and its insurer collectively as "Employer."

2. Long-established case law holds, under the Commission's regulation regarding points on review, that a party who fails to timely file a proper application for review can seek no further relief from the Commission or any appellate court. See, e.g., *Donovan v. Temporary Help*, 54 S.W.3d 718 (Mo.App.2001); *Smith v. Richardson Bros. Roofing*, 32 S.W.3d 568 (Mo.App.2000); *Smith v. Smiley Container Corp.*, 997 S.W.2d 126 (Mo.App.1999); *Szydlowski v. Metro Moving & Storage Co.*, 924 S.W.2d 325 (Mo.App.1996); *Lawson v. City of St. Louis*, 839 S.W.2d 47 (Mo.App. 1992); MoBar CLE, Worker's Compensation Law, § 1.6 (3d ed.2004). These cases also are considered in the discussion of 8 CSR 20–3.030(3)(A), *infra*.

not filing an application for review, Fund sent a certified letter notifying the Commission and all parties that "since the Second Injury Fund did not file an appeal [3] in this matter, we will not be submitting a brief," and a second letter two months later reiterating, "[a]s I believe we previously indicated, the Second Injury Fund did not file an appeal in this matter. Therefore, we will not be participating in the appeal process and we will not be submitting a brief."

Just two Commissioners participated when Employer's appeal was orally argued to the Commission.[4] Commissioner Ringer, a former partner in the law firm representing Employer, did not sit. Thereafter, the Commission issued its Final Award which:

1. Vacated the ALJ's award of $48,886 past medical expenses;
2. Vacated the ALJ's award of future medical expenses;
3. Vacated the ALJ's award of additional TTD benefits;
4. Reduced the ALJ's 30% back injury rating to 5%, thereby reducing Employer's total PPD liability to 10%; and
5. Despite Fund's unwillingness to seek relief or participate in the proceedings, the Commission also set aside Claimant's PTD award against Fund and absolved Fund of all liability whatsoever.

Thus, Claimant's award was reduced to $8,177 total. The Commission's decision was a two-to-one vote, with Commissioner Ringer entering the case to cast the deciding vote under the "Rule of Necessity."

In this appeal, Claimant initially asserts the Commission exceeded its powers by vacating without notice his PTD award against Fund because (1) that was an unnecessary (non-appealed) issue, when the Commission was acting under a rule of "necessity;" and (2) doing so violated the Commission's regulation governing points on review. No party has cited dispositive authority on either issue, nor have we found clear answers, even after extending our own research to other jurisdictions. Nonetheless, we proceed to consider Claimant's contentions.

## Rule of Necessity

■ The Rule of Necessity allows an otherwise disqualified decisionmaker to participate if a decision is necessary and there is no alternative. Missouri's lead case in the workers' compensation context is *Barker v. Secretary of State*, 752 S.W.2d 437 (Mo.App.1988), in which Commissioner Fischer previously had represented the employer/insurer. She disqualified herself and did not participate when the case came before the Commission. But when the other two commissioners deadlocked, she cited the Rule and cast the deciding vote. The court on appeal noted a paucity of Missouri law, but undertook to examine the Rule carefully, being concerned not only that justice be done, but that the appearance of justice also be maintained. *Id.* at 439. The court "agonized at great length to arrive at a fair and just solution" to what it considered an "unusual and vexatious problem." *Id.* at 441. The court concluded that actions under the Rule should be reviewed with "special intensity," and the record and circumstances

---

**3.** As Fund did in these letters, on occasion we also may refer to the Commission's review as an "appeal," but technically it is not. On application for review, the Commission is the ultimate trier of fact. *Bock v. Broadway Ford*

*Truck Sales, Inc.*, 55 S.W.3d 427, 438 (Mo. App.2001).

**4.** This is not in the record, but counsel so advised us at oral argument.

thoroughly examined "to determine if any injustice has been done." *Id.* Ultimately the court upheld Commissioner Fischer's decision to vote; but reversed the Commission's award.[5] *Id.* at 481–82.

 *Barker* directs us to review this case with "special intensity," fundamentally, because the due process right to an impartial decisionmaker applies here and in all quasi-judicial administrative proceedings:

> The procedural due process requirement of fair trials by fair tribunals applies to administrative agencies acting in an adjudicative capacity. Administrative decisionmakers must therefore be impartial. "Not only is a biased decisionmaker constitutionally unacceptable but 'our system of law has always endeavored to prevent even the probability of unfairness.' "

*Fitzgerald v. City of Maryland Heights,* 796 S.W.2d 52, 59 (Mo.App.1990), *quoting Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) (internal citations omitted). "[O]f all the rights encapsulated within due process, the requirement of an impartial decisionmaker is the most important because without that right, the other rights become meaningless." Arnold Rochvarg, *Is the Rule of Necessity Really Necessary in State Administrative Law: The Central Panel Solution,* 19 J. Nat'l Ass'n Admin. L. Judges 35 (Fall 1999). We consider Claimant's first contention within this due process framework.

Claimant asserts that a decisionmaker acting under the Rule must limit itself to necessary decisions—i.e., the Rule's scope is limited by and to the pending "necessity." This makes sense. In contrast, Employer and Fund say the Rule applies to the whole case, not particular issues—i.e.,

a biased decisionmaker's authority under the Rule becomes as broad as the case. This also sounds reasonable, but we are accustomed to tribunals limiting themselves to the claims and issues between the parties before them. Here the Commission reached out without notice to make decisions no one asked for, and to grant unrequested relief to a non-participant who had told the Commission, repeatedly in writing, that it was not seeking its ruling or aid. We are skeptical this was the kind of "necessity" that birthed the Rule initially or sustains it today.

Still, we find no case squarely addressing Claimant's "scope" argument. But Rule of Necessity cases are rare. If within those few cases, the decisionmakers limited themselves to necessary decisions (by choice or perceived obligation), perhaps this is the first occasion to consider the Rule's scope.

The paucity of Missouri law noted in *Barker* has compelled us to look to other jurisdictions for guidance. Several courts have characterized the Rule of Necessity, while sometimes necessary, as contrary to sound public policy and to be used only in case of "strict and imperious necessity." See, e.g., *Board of Trustees v. Spiegel,* 549 P.2d 1161, 1168 (Wyo.1976); *State ex rel. Brown v. Dietrick,* 191 W.Va. 169, 444 S.E.2d 47, 55 (1994), *quoting* 46 Am.Jur.2d *Judges* § 90 (1969) for the "strict and imperious necessity" requirement. As in *Barker,* the *Spiegel* court also quoted from Professor Davis's treatise:

> "But what is the cure? How can reviewing courts escape the rule of necessity? One escape route is by recognizing that in some circumstances the so-called 'necessity' may be something less than absolute."

---

**5.** The Commission was reversed again this year in the only other reported appeal where

it invoked the Rule. *Jennings v. Station Casino St. Charles,* 196 S.W.3d 552 (Mo.App.2006).

549 P.2d at 1169, *quoting* 2 KENNETH DAVIS, ADMINISTRATIVE LAW TREATISE § 12.04.

"Necessity" was narrowly interpreted in *City of Huntsville v. Biles*, 489 So.2d 509 (Ala.1986), wherein the Alabama Supreme Court observed that mandamus could issue to prevent a biased board from hearing a case, even in the absence of an alternative tribunal, because " 'the courts very generally agree that of course the rule of disqualification is the paramount policy,' " and should yield to the Rule " 'only when there exists therefor a very great necessity to prevent a failure of justice.' " *Id.* at 514, 515, quoting *State ex rel. Miller v. Aldridge*, 212 Ala. 660, 103 So. 835, 836, 838 (1925).

Claimant's position also finds support in cases identifying "necessity" with a *litigant's* right to have *its issues* decided, a description that fits Employer before the Commission, but does not fit the non-appealing Fund. The Supreme Court focused *on the litigants before it,* and *their rights* to have *their claims* determined, when it applied the Rule in *Evans v. Gore,* 253 U.S. 245, 40 S.Ct. 550, 64 L.Ed. 887 (1920):

> The plaintiff was entitled by law to invoke our decision on the question.... He brought the case here in due course, the government joined him in asking an early determination of the question involved, and both have been heard at the bar and through printed briefs. In this situation, the only course open to us is to consider and decide the cause—a conclusion supported by precedents reaching back many years.

*Id.* at 247–48, 40 S.Ct. 550. Sixty years later, the Supreme Court again linked the Rule to "a litigant's constitutional right to have a question, properly presented to such court, adjudicated." *U.S. v. Will,* 449 U.S. 200, 214, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980), *quoting State ex rel. Mitchell v. Sage Stores Co.,* 157 Kan. 622, 143 P.2d 652, 656 (1943). Other courts of last resort used similar language. *See, e.g., Lorenz v. New Hampshire Administrative Office,* 151 N.H. 440, 858 A.2d 546, 549–50 (2004); *Hudson v. Johnstone,* 660 P.2d 1180, 1183 (Alaska 1983). Under this rationale, the Rule of Necessity may apply to Employer's claims before the Commission. Employer sought and was legally entitled to Commission review and determination of the issues in Employer's application for review. Unless the Rule was invoked, the Commission's deadlock deprived Employer of the review it sought and to which it was statutorily assured. Thus, "strict and imperious necessity" arguably justified the Rule's use regarding Employer's claims. But invoking the Rule to absolve Fund of liability that Fund refused to appeal, and apparently was satisfied to concede (*see* note 2, *supra* ), is not so easily justified under the foregoing cases focusing on *litigants,* the issues *they* raise, and *their rights* to a determination of *their disputes.*

These cases, while from other jurisdictions, harmonize with Claimant's position, the Rule's historical development, and common sense. Add in the due process requirement of an impartial decisionmaker, the Rule's inconsistency therewith, and the consequence that the Rule is to be invoked only for "strict and imperious necessity," and reasonable minds could conclude that Claimant is correct: A biased tribunal acting under the Rule should and perhaps must confine itself to decisions raised by its present litigants, and absent a compelling reason to do so, should not reach further to decide issues the litigants have not raised or to grant unrequested relief to non-participants. This approach also seems fair to both Employer and Fund. Employer still gets its issues decided, and Fund cannot complain it was denied a review that it never sought and repeatedly declined. Obviously, the Com-

mission would have no objection, since as an impartial decisionmaker, it takes no side in the case or its result. But we do not yet decide this question; rather we proceed to consider the second prong of Claimant's argument.

### 8 CSR 20–3.030(3)(A)

Claimant's initial point also asserts the Commission violated 8 CSR 20–3.030(3)(A), the Commission's regulation governing points on review, when it reached the non-appealed PTD issues. The Commission's Final Award asserted authority to consider and resolve non-appealed issues as follows:

> Upon its own motion or upon the application of any party of interest, the Commission may end, diminish, or increase the compensation awarded by the administrative law judge in the Commission's final award. The Commission is not limited to a review of the errors complained of by the moving party. *Waterman v. Chicago Bridge & Iron-works,* [328 Mo. 688] 41 S.W.2d 575 (Mo. 1931); *Smith v. International Shoe Company,* 49 S.W.2d 233 (Mo.App.1993 [1932]); *Shaw v. Scott,* 49 S.W.3d 720 (Mo.App.2001); and *Champ v. Doe Run Co.,* 84 S.W.3d 493 (Mo.App.2002).

Fund[6] now cites us to the same cases for the same assertions, plus the further proposition—implicit in the Final Award—that the Commission can do so without notice.

Although Employer and Fund acknowledge the Commission reviewed this case under section 287.480,[7] the Commission's first quoted sentence partially tracks section 287.470, while overlooking other section 287.470 text requiring "due notice to the parties interested." Furthermore, section 287.480 directs the Commission to make and file awards "in like manner as specified in section 287.470." Certainly neither statute, by its terms, authorizes the Commission to decide claims or issues without appropriate notice.

The Commission's next contention—that it "is not limited to a review of the errors complained of by the moving party"—is not supported by three of the four cited cases, and the remaining case does not suggest the Commission can act without notice. The two recent cases—*Shaw* and *Champ*—do not consider this issue at all. In the 1931 *Waterman* case, the Commission never changed the referee's disability award; it merely adjusted the employer's credit to reflect additional payments between the initial award and the Commission's agreement therewith.

The only arguably supportive case is the 1932 *Smith* case,[8] where the referee initially awarded the claimant TTD benefits, but denied any permanency award. When the claimant sought Commission review to increase his award, the Commission reduced the award instead. On appeal, the claimant contended the Commission was limited to reviewing his claims of error, and thus was powerless to reduce his award. Citing *Waterman* and the predecessors of current sections 287.470 and 287.480 together, the *Smith* court said "the commission is not so limited in its powers, but 'may make an award ending, diminishing or increasing the compensation previously awarded.'"

---

6. We note the incongruity of Fund arguing its PTD liability before us now, after it refused to seek Commission review thereof. *See* note 2, *supra.* Claimant has not objected, so we express no opinion whether or to what extent the Fund properly may participate hereafter before the Commission or on any further appeal.

7. Statutory references are to Missouri Revised Statutes (2000), unless otherwise indicated.

8. *Smith v. International Shoe Co.,* 49 S.W.2d 233 (Mo.App.1932). The Commission's Final Award erroneously calls this a 1993 case.

49 S.W.2d at 235. This quoted language again tracks section 287.470 text, not section 287.480.[9] Also, as previously noted, the Commission never actually changed the initial award in *Waterman.* Thus, *Smith's* precedential underpinnings on this point are thin at best, and in the following 74 years, no subsequent case has cited *Smith* again for this proposition. In fact, *Smith* is mentioned at all in just six later cases; never for this proposition; and not for any reason since 1944. Perhaps this is not coincidental in view of the Commission's subsequently adopted regulation, now 8 CSR 20–3.030(3)(A):

An applicant for review of any final award, order or decision of the administrative law judge shall state specifically in the application the reason the applicant believes the findings and conclusions of the administrative law judge on the controlling issues are not properly supported. It shall not be sufficient merely to state that the decision of the administrative law judge on any particular issue is not supported by competent and substantial evidence.

It has become virtually hornbook law that this regulation means any issue not included in a timely application for review is not preserved for review by the Commission or any appellate court. *See* note 2, *supra.* Thus, even if *Smith* once stood for the proposition that the Commission will not limit review to issues raised by the parties, it is by no means clear that it still does so, given (1) the Commission's subsequent regulation of points on appeal; (2) the volume of cases arguably interpreting that regulation contrary to, or at least not supportive of, *Smith*; and (3) the courts' complete failure to again cite *Smith* for this proposition in the subsequent 74 years.

At oral argument, Claimant interpreted cases describing Commission review as "plenary" or "de novo" as meaning *de novo* review of the points raised under 8 CSR 20–3.030(3)(A). Such reasoning is illustrated by *In re Fay,* 150 N.H. 321, 837 A.2d 329 (2003), in which the hearing officer awarded the claimant TTD benefits and back-related medical bills, but denied his claim for other medical expenses. The claimant asked the appeals board to review only the denied claims, and the employer filed no cross-appeal. The appeals board denied the claimant's appeal, then went further and set aside the TTD award as well. The court agreed that the appeal board exceeded its authority in doing so:

The board's *de novo* review is limited to issues raised in the department of labor proceedings being appealed. "Because of the breadth and complexity of the workers' compensation statutory scheme, limiting the issues reviewable by the board ensures that parties can reasonably anticipate the issues for which they must prepare evidence and argument." Moreover, "the board's *de novo* review of an appeal does not confer upon non-appealing parties the right to pursue their claims on appeal."

*Id.* at 333 (internal citations omitted).

### Notice

■ But even if 8 CSR 20–3.030(3)(A) and its developed case law did not preclude the Commission from vacating the non-appealed PTD award—an issue we do not yet decide—the Commission exceeded its power in doing so without affording Claimant appropriate notice and opportunity to be heard. We note again that section 287.480 directs the Commission to make and file awards "in like manner as specified in section 287.470," and section

---

9. Sections 287.470 and 287.480 are similar, in all respects material to this case, to their respective 1929 predecessors, R.S. 3340 and 3341.

287.470 in turn requires "due notice to the parties interested." We need not decide what, if anything, such provisions mean to this case,[10] since fundamental principles of due process, fairness, and *Barker's* emphasis on justice in fact *and in perception* compel the same result, especially when a decisionmaker acts under the Rule of Necessity, which itself derogates due process. Indeed, unless such a tribunal exercises special vigilance about other fairness and due process considerations, it may unnecessarily cast itself in an unfavorable light, even if the body and its individual members acted in utmost good faith.

▉ "Due Process requires that a person facing deprivation of property receive notice and an opportunity for hearing appropriate to the nature of the case. Moreover, due process contemplates the opportunity to be heard at a meaningful time and in a meaningful manner." *Willard v. Red Lobster,* 926 S.W.2d 550, 553–54 (Mo.App.1996) (internal citations omitted). This is true in workers' compensation cases in Missouri and elsewhere. *See, e.g., Willard, supra; Brown v. Beckwith Evans Co.,* 192 Mich.App. 158, 480 N.W.2d 311, 320 n. 3 (1991) (workers' compensation appeal board proceeding is *de novo,* but if issues not raised by parties are considered, parties should have opportunity to brief and argue them). The Michigan Supreme Court said it well:

> In the instant case the commission, after the matter had been submitted to it as hereinbefore indicated, without notifying the defendant, took up matters not indicated by the parties as being considered by the parties as being in controversy in the case. We consider that the commission though it has broad powers as to

the hearing, should have in fairness to the defendant, given the defendant an opportunity to present its views on the matters thus additionally taken up by the commission for its consideration.

*Fawley v. Doehler–Jarvis Division,* 342 Mich. 100, 68 N.W.2d 768, 770 (1955).

## Conclusion

The *Barker* court admitted it "agonized at great length to arrive at a fair and just solution to the problem" of a disqualified commissioner casting the deciding vote in derogation of due process guarantees. 752 S.W.2d at 441. If that court "agonized" under those circumstances, what if the Commission had invoked the Rule to reach non-appealed issues (apparently not so in *Barker*); and granted relief to a party who refused to participate (not so in *Barker*); by reversing the ALJ's decision in virtually all respects (the Commission *upheld* the ALJ's decision in *Barker*); all without notice or any opportunity for the affected party to be heard (apparently not so in *Barker*)? If the *Barker* court worried from the outset about preserving the "fundamental precept" that "not only must justice be done, an appearance of justice must be maintained" (*Id.* at 439) under the facts of its case, what would it think here?

*Barker* and *Station Casino* set a precedent for reviewing cases like this with special intensity, and for reversing Commission action in circumstances less compelling than these. Perhaps we justly could do so as well, but we decline at present to resolve either the Rule of Necessity or 8 CSR 20–3.030(3)(A) issues previously discussed, since the Commission's actions on remand may render such decisions unnecessary. Nor do we yet reach

---

**10.** Although *Faries v. ACF Industries, Inc.,* 531 S.W.2d 93, 99 n. 6 (Mo.App.1975) involved different issues, the court there suggested that section 287.480's cross-reference to section 287.470 refers only to procedural aspects, and specifically to sending a copy of the award to the parties and the insurer.

Claimant's other points, since it is not yet, and may never be, necessary to do so. Instead, we reverse that part of the Commission's Final Award setting aside the ALJ's findings regarding Claimant's permanent total disability and Fund's liability therefor, and remand this case to the Commission for further proceedings not inconsistent herewith. We do not require the Commission to once again consider the non-appealed PTD issues, but if it determines to do so, it should give Claimant appropriate notice and opportunity to be heard. In that event, to the extent appropriate, the Commission also should specifically consider and address the Rule of Necessity and 8 CSR 20–3.030(3)(A) issues raised by Claimant and discussed herein, for our consideration in case of further appeal.[11]

RAHMEYER, P.J., and PARRISH, J., concur.

---

**11.** Although the Commission's legal conclusions and analysis may not bind us, we may still consider them if persuasive.