David MURPHY, Claimant–Appellant

v.

BARBEQUE WOOD FLAVORS, INC., and Treasurer of the State of Missouri, Custodian, Second Injury Fund, Respondents.

No. 28466.

Missouri Court of Appeals, Southern District, Division One.

Feb. 7, 2008.

Bruce A. Copeland, Copeland & Brown, Joplin, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Christina Hammers, Jefferson City, MO, for Respondent Second Injury Fund.

JOHN E. PARRISH, Presiding Judge.

David Murphy (claimant) appeals the part of a final award of the Labor and Industrial Relations Commission (the commission) that established claimant's rate of pay for purposes of awarding benefits to be paid by the Second Injury Fund (the fund). Claimant contends the commission did not correctly calculate the hourly rate of pay he was to earn from his employment and in using a 40–hour work week in calculating his weekly earnings. This court affirms.

Claimant was hired by Barbeque Wood Flavors, Inc., (employer) following an interview on January 4, 2003, with Lynn Wallace, employer's plant manager. Claimant was to perform maintenance on machinery used in employer's manufacturing plant. Prior to hiring claimant, employer did not have a designated maintenance person. Claimant did not have a set schedule. Claimant was told he would be required to be "on call" seven days a week. Claimant's rate of pay for the first week was set at $9.00 per hour. He testified he was told that he and the plant manager would evaluate his job performance, and after the first week they would discuss "bigger money" if the manager was satisfied with claimant's job performance.

Claimant's first day of work was January 6, 2003. He said he arrived at the workplace at approximately 7:00 a.m. Claimant worked on one production machine from the time he arrived until about 5:30 p.m. without taking a break for lunch. Claimant testified that the next day he again reported about 7:00 a.m.[1] During his second day of work, claimant tripped and fell, suffering the injuries for which he was awarded compensation. After his accident, claimant continued working because the breakdown of the machine he was attempting to repair had halted production. Claimant said he finished work that day at approximately 9:00 p.m.; that as had occurred the preceding day, he had not taken a break for meals.

The claim against employer was settled. The settlement was approved by an administrative law judge and is not an issue in this appeal.

The claim against the fund was tried by an administrative law judge. The following award was made.

> [The fund] is ordered to pay [claimant] the sum of $240.00 per week for [claimant's] lifetime. The payment of the permanent total disability compensation by [the fund] is effective as of Au-

---

1. No timecard had been prepared for claimant, so there is no record of when he clocked in or out.

gust 21, 2003, which takes into consideration [claimant] reaching maximum medical improvement on August 21, 2003 and 157.6 weeks of permanent partial disability compensation to be paid by the employer and insurer. (There is no differential between permanent partial disability compensation and permanent total disability compensation. Hence, [the fund] is not liable for the payment of the first 157.6 weeks of permanent disability compensation.)

The commission approved and affirmed the award and adopted the award and decision of the administrative law judge. The administrative law judge's award and decision was attached to and made part of the commission's Final Award Allowing Compensation by incorporation by reference.

The scope of this court's review is explained in *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo.banc 2003):

> The Missouri constitution, article V, section 18 provides for judicial review of the commission's award to determine whether the award is "supported by competent and substantial evidence upon the whole record."
>
> Section 287.495.1 of the Missouri statutes further indicates that a "court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the award was procured by fraud;
>
> (3) That the facts found by the commission do not support the award;
>
> (4) That there was not sufficient competent evidence in the record to warrant

the making of the award." [Footnote omitted.]

*Id.* at 222

■ Claimant's first point on appeal contends the commission erred in not applying § 287.250.1(5)[2] to determine the correct rate of pay for purposes of calculating the benefits he should receive from the fund. Claimant argues that he had been employed less than two calendar weeks immediately preceding his injury; that the average weekly prevailing wage for the same or similar employment was $704. He contends the award was not supported by competent and substantial evidence on the basis of the record that was before the commission.

The commission, by adopting the findings and conclusions of the administrative law judge, concluded:

> In the present case, [claimant] and employer entered into an employment agreement, wherein [claimant] agreed to work for [employer] in the maintenance position for one week, at an agreed upon hourly wage of $9.00 per hour. Additionally, while the parties did not identify the presence of overtime or weekend work as a certainty or expectation, and did not identify a scheduled work week, the parties understood that [claimant's] work could possibly encompass overtime or weekend work. Yet, and unfortunately, while on the job for only two days [claimant] sustained an occupational injury, which necessitated receipt of medical care and removed him from work.
>
> After consideration and review of the evidence, I find and conclude that the evidence presented in this case does not allow for an average weekly wage to be determined by the provisions of subsections 1 through 3 of Section 287.250,

2. References to statutes are to RSMo 2000.

RSMo. Notably, Section 287.250.1(5), RSMo is not applicable, insofar as the parties had agreed to and established an hourly weekly wage, but the parties did not establish a specific or defined work schedule. Nor is Section 287.250.1(6), RSMo applicable to the present case, insofar as the parties agreed to a fixed hourly wage. Thus, I find and conclude that Section 287.250.4, RSMo governs the determination of the applicable compensation rate in the present case.

Section 287.250.1 provides:

Except as otherwise provided for in this chapter, the method of computing an injured employee's average weekly earnings which will serve as the basis for compensation provided for in this chapter shall be as follows:

(1) If the wages are fixed by the week, the amount so fixed shall be the average weekly wage;

(2) If the wages are fixed by the month, the average weekly wage shall be the monthly wage so fixed multiplied by twelve and divided by fifty-two;

(3) If the wages are fixed by the year, the average weekly wage shall be the yearly wage fixed divided by fifty-two;

(4) If the wages were fixed by the day, hour, or by the output of the employee, the average weekly wage shall be computed by dividing by thirteen the wages earned while actually employed by the employer in each of the last thirteen calendar weeks immediately preceding the week in which the employee was injured or if actually employed by the employer for less than thirteen weeks, by the number of calendar weeks, or any portion of a week, during which the employee was actually employed by the employer. For purposes of computing the average weekly wage pursuant to this subdivision, absence of five regular or scheduled work days, even if not in the same calendar week, shall be considered as absence for a calendar week. If the employee commenced employment on a day other than the beginning of a calendar week, such calendar week and the wages earned during such week shall be excluded in computing the average weekly wage pursuant to this subdivision;

(5) If the employee has been employed less than two calendar weeks immediately preceding the injury, the employee's weekly wage shall be considered to be equivalent to the average weekly wage prevailing in the same or similar employment at the time of the injury, except if the employer has agreed to a certain hourly wage, then the hourly wage agreed upon multiplied by the number of weekly hours scheduled shall be the employee's average weekly wage;

(6) If the hourly wage has not been fixed or cannot be ascertained, or the employee earned no wage, the wage for the purpose of calculating compensation shall be taken to be the usual wage for similar services where such services are rendered by paid employees of the employer or any other employer;

(7) In computing the average weekly wage pursuant to subdivisions (1) to (6) of this subsection, an employee shall be considered to have been actually employed for only those weeks in which labor is actually performed by the employee for the employer and wages are actually paid by the employer as compensation for such labor.

The commission, in adopting the findings and conclusions of the administrative law judge and determining that § 287.250.4 was applicable to this case, held as follows:

Rendering a fair determination of the [claimant's] average weekly wage is dif-

ficult, at best. However, it is clear that the parties intended to compensate [claimant] at an agreed upon hourly wage of $9.00 per hour. It is further clear that the parties' agreement contemplated the opportunity for [claimant] to work a full workweek, at the agreed upon hour wage of $9.00 per hour, and thereafter the two parties would reevaluate the employment relationship. Also, while the parties did not identify a scheduled workweek, and the parties understood that [claimant's] work could possibly encompass overtime or weekend work, the parties did not identify the presence of overtime or weekend work as a certainty or expectation.

Accordingly, after consideration and review of the evidence, I find and conclude that it is reasonable to assume a 40 hour workweek, multiplied by the agreed upon hourly wage of $9.00 per hour, to render a fair determination of the average weekly wage of $360.00. Therefore, in light of the foregoing, I find and conclude that the applicable compensation rate is $240.00.

■ "In determining the applicable weekly wage rate under section 287.250 '[i]t is necessary to commence with the first subsection and then to descend in numerical order under the other subsections until the wage rate provision is found that applies to the particular facts of the case.'" *Adamson v. DTC Calhoun Trucking, Inc.*, 212 S.W.3d 207, 213 (Mo.App. 2007), quoting *Stegeman v. St. Francis Xavier Parish*, 611 S.W.2d 204, 210 (Mo. banc 1981). (*Adamson* explains that although *Stegeman* was decided under a prior version of § 287.250, the approach set forth in *Stegeman* is still followed under the current version of the statute. 212 S.W.3d at 213 n. 6.) Claimant contends by his Point I that the commission's determination that § 287.250.1(5) is not applicable

is error; that it, rather than § 287.250.4 which the commission utilized to determine the average weekly wage, should be followed.

The commission concluded that § 287.250.1(5) was not applicable for purposes of determining claimant's average weekly wage "insofar as the parties had agreed to and established an hourly weekly wage, but the parties did not establish a specific or defined work schedule." It, therefore, determined, pursuant to § 287.250.4, that the calculation of benefits would be based on a wage of $9.00 per hour and a schedule of 40 hours per week.

In order for § 287.250.1(5) to apply, claimant must have been "employed less than two calendar weeks immediately preceding the injury," which he was. Claimant argues that the statute, therefore, requires his average weekly wage to be, as stated in the first part of § 287.250.1(5), "the average weekly wage prevailing in the same or similar employment at the time of the injury." Section 287.250.1(5), however, provides an exception to establishing the average weekly wage in that manner. The last part of that paragraph states that this method for determining average weekly wage does not apply "if the employer has agreed to a certain hourly wage." In that circumstance, the agreed hourly wage is used in determining the "average weekly wage" for purposes of ascertaining benefits to which an injured employee (who was employed less than two calendar weeks) is entitled to receive.

The commission found that there had been an agreed wage in the amount of $9.00 per hour. That determination is supported by competent and substantial evidence. Had there been an established weekly number of hours claimant was to work, § 287.250.1(5) would have required those hours to be multiplied by the agreed hourly wage to establish the average week-

ly wage for determination of worker's compensation benefits. The commission found, however, that "the parties did not establish a specific or defined work schedule." For that reason, it found that § 287.250.1(5) was not applicable. That determination is supported by competent and substantial evidence on the basis of the whole record that was before the commission.

Section 287.250.4, on which the commission based its award having found subsections 1–3 of the statute not applicable, provides:

> If pursuant to this section the average weekly wage cannot fairly and justly be determined by the formulas provided in subsections 1 to 3 of this section, the division or the commission may determine the average weekly wage in such manner and by such method as, in the opinion of the division or the commission, based upon the exceptional facts presented, fairly determine such employee's average weekly wage.

The commission concluded that it was clear the parties intended to compensate claimant at an agreed upon hourly wage of $9.00 per hour; that the parties' agreement contemplated the opportunity for claimant to work a full work week, but had not identified a particular scheduled work week; that although the parties understood claimant's work requirements could encompass overtime or weekend work, they had not identified the presence of overtime or weekend work to be a certainty or an expectation. On that basis the commission found, adopting the findings of the administrative law judge, that it was reasonable to assume a 40–hour work week which, when multiplied by the agreed hourly wage of $9.00 per hour, would provide an average weekly wage of $360. That resulted in the applicable compensation rate of $240 per week.

Claimant argues that his work time would have fluctuated due to anticipated overtime; that, therefore, the commission's use of a 40–hour week was erroneous. There is no history, however, from which a work schedule other than the 40–hour week used by the commission could be ascertained with any degree of certainty. There was evidence that a 40–hour work week was used as the method of compensating a fellow employee of claimant, Sean Boda. Boda received a computer generated check based on a 40–hour work week. When he worked overtime, overtime hours were paid by handwritten checks. On the basis of the evidence before it, the commission concluded that a fair determination of claimant's average weekly wage would be to calculate the average weekly wage using a rate of $9.00 per hour and a regular scheduled work week of 40 hours.

 As *Reeves v. Midwestern Mortgage Co.*, 929 S.W.2d 293 (Mo.App.1996), explains:

> We must affirm the Commission's decision if, after a review of the entire record in the light most favorable to the finding, we believe the award is supported by competent and substantial evidence. *Thornton v. Haas Bakery,* 858 S.W.2d 831, 833 (Mo.App.1993). In making this determination, evidence which might support findings different from those of the Commission must be disregarded. *Id.* Questions of fact are for the Commission and we may not substitute our judgment on the evidence for that of the Commission's, even if the evidence could support a contrary finding. *Id.* The weight to be given evidence rests with the Commission and it alone determines the credibility of witnesses. *Id.* Where competent evidence is conflicting, resolution is for the Com-

mission and its choice is binding upon this court. *Id.*

*Id.* at 295. The commission's award was supported by competent and substantial evidence. The applicable provision for determining claimant's average weekly earnings is § 287.250.4. Point I is denied.

■ Point II asserts "[t]he commission erred in concluding and holding that § 287.250.1(5) was not applicable ... for the reason that the 'parities had agreed to and established an hourly weekly wage' because the commission did not expressly find that such hourly wage was 'certain' as required by the exception language of § 287.250.1(5)." This refers to the part of the exception in § 287.250.1(5) that provides "except if the employer has agreed to a *certain* hourly wage, then the hourly wage agreed upon" is used in establishing an average weekly wage for purposes of determining benefits. (Emphasis added.)

As this court understands claimant's allegation of error in Point II, he contends because the commission did not use the word "certain" in finding an agreed hourly wage existed, the commission erred in not disregarding the "exception" language in § 287.250.1(5); that the commission, therefore, was required to ascertain an average weekly wage by determining, in accordance with the first part of that statute, "the average weekly wage prevailing in the same or similar employment at the time of the injury" and utilizing that amount for purposes of determining benefits.

This court's research revealed no case that has imposed the restriction claimant suggests in finding § 287.250.1(5) applicable to a particular fact situation. Thus, this court turns to the conventional meaning of "certain" for purposes of considering Point II in that when a term used in a statute is not defined by that legislation, courts rely on the dictionary definition in ascertaining the meaning of that term.

*Fisher v. Waste Management of Missouri,* 58 S.W.3d 523, 526 (Mo.banc 2001). Black's Law Dictionary 204 (5th ed.1979) defines "certain" as "[a]scertained; precise; identified; definitive; clearly known; unambiguous; or, in law, capable of being identified or made known, without liability to mistake or ambiguity, from data already given," and as "[f]ree from doubt." The Merriam–Webster's Collegiate Dictionary 202 (11th ed.2003) defines "certain" as "fixed, settled." Claimant's hourly wage was fixed and settled at $9.00 per hour at the time of his injury. His hourly wage was certain. Point II is denied.

Point III complains that the commission's use of a 40–hour work week in calculating average weekly earnings was error. Claimant contends this was contrary to the evidence in the record; that the evidence was that claimant did not have a set work week but was "on call" seven days a week. This was addressed by the commission's finding that "the parties did not identify the presence of overtime or weekend work as a certainty or expectation." Questions of fact are to be resolved by the commission. *Reeves v. Midwestern Mortgage Co., supra.* To the extent the evidence was conflicting, resolution is for the commission and its determination is binding on this court. *Id.* As discussed with respect to Point I, claimant worked only two days. There was sufficient evidence for the commission to conclude that a 40–hour week was appropriate for use in calculating average weekly earnings in order to determine claimant's allowable benefits. Point III is denied. The award is affirmed.

BATES and RAHMEYER, JJ., concur.

SCOTT, J., recused.