Daniel MELL, Appellant,

v.

BIEBEL BROTHERS, INC.,
Respondent/Cross
Appellant,

and

Treasurer of the State of Missouri as
Custodian of Second Injury
Fund, Respondent.

No. ED 89404.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 4, 2008.

Jagadeesh B. Mandava, Saint Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Attorney General, Tracey E. Cordia, Assistant Attorney General, Saint Louis, MO, for respondent for Second Injury Fund.

Mary Anne Lindsey, Timothy M. Tierney, Saint Louis, MO, for respondents/cross-appellants.

## OPINION

GLENN A. NORTON, Judge.

In this consolidated appeal, Daniel Mell ("Claimant") seeks review of two Labor and Industrial Relations Commission ("Commission") decisions. The first decision affirmed the Administrative Law Judge's ("ALJ") award of permanent partial disability ("PPD") benefits from Biebel Brothers, Inc. ("Employer") and from the Second Injury Fund ("Fund") for an injury occurring on July 27, 2001. The second decision of the Commission affirmed in part the ALJ's award of PPD benefits from Employer and the Fund for an injury occurring on January 9, 2002, and also awarded future medical benefits from Employer.

The Employer has filed a cross-appeal seeking review of the Commission's decision to award future medical benefits from Employer. We affirm in part and reverse and remand in part.

## I. BACKGROUND

Claimant, who was diagnosed with a learning disability early in his education, dropped out of school after completing ninth grade and began working for Employer as a roofer. In June 1999, approximately six years after he began working for Employer, Claimant injured his back ("First Injury"). He underwent surgery performed by Dr. Frank Petkovich, an orthopedic surgeon, and was able to return to work without any restrictions. Claim-

ant settled the First Injury for 20% PPD of the body as a whole related to this injury.

Claimant sustained another back injury on July 27, 2001 ("Second Injury"), and returned to Dr. Petkovich for treatment. Claimant underwent a second surgery on his lower back. On November 26, 2001, he was released to his regular job duties, and on December 19, 2001, he was released from Dr. Petkovich's care without any restrictions.

Claimant sustained a third back injury on January 9, 2002 ("Third Injury"). Upon the recommendations of Dr. Petkovich and two other physicians, Claimant underwent a third surgery. Claimant attempted rehabilitation and pain management therapy. He was placed on restrictions from lifting more than 35 pounds, and from any repetitive bending, stooping, kneeling or squatting. He eventually decided to discontinue the prescribed medications, despite continuing to experience ongoing pain, weakness and stiffness in his low back. Claimant has not returned to work and has had to significantly limit his activities. Claimant needs to lie down several times a day to experience relief from his pain.

At the hearing before the ALJ, Dr. Petkovich opined that Claimant had a 23% PPD of the body as a whole related to the Third Injury, which was in addition to the previous ratings of 10% PPD Dr. Petkovich assigned following each of the two prior injuries. Claimant also offered the testimony of Dr. David Volarich, an osteopathic physician with a certification as an independent medical examiner. Dr. Volarich examined Claimant once prior to the ALJ hearing and assigned a 30% PPD of the body as a whole related to the Second Injury, and an additional 45% PPD of the body as a whole as a result of the Third Injury.

Mr. James England, a certified rehabilitation counselor, performed a vocational rehabilitation evaluation of Claimant. Mr. England stated that based solely on the restrictions provided by Dr. Petkovich, there would be some kinds of work available in the open labor market suitable for Claimant, including packing and assembly jobs. Mr. England, however, also considered the restrictions placed on Claimant by Dr. David Raskas and Dr. Volarich, as well as Claimant's academic records. Mr. England rendered the opinion that Claimant is unemployable due to a combination of his preexisting injuries, academic deficiencies and the Third Injury. Mr. England, however, also testified that additional training could improve Claimant's math and reading abilities, which in turn would improve his employability.

With respect to the Second Injury, the ALJ found that Claimant had a total of 45% PPD of the body as a whole, related to the low back. The ALJ deducted 20% PPD resulting from the First Injury and assigned 20% PPD to Employer and 5% PPD to the Fund. The ALJ found that Claimant was not entitled to future medical benefits.

With respect to the Third Injury, the ALJ found that Claimant had a total of 82.5% PPD of the body as a whole, related to the low back. The ALJ deducted the prior assessed disability of 45% and assigned 27.5% to the Employer and 10% to the Fund. The ALJ denied Claimant's request for future medical benefits.

Claimant filed an application for review with the Commission. The application requested review of the ALJ's determinations with respect to the extent of Claimant's disability. The application did not raise the issue of future medical benefits. The Commission affirmed both awards of the ALJ, except on the issue of future

medical benefits. The Commission, *sua sponte*, determined that Claimant was entitled to future medical benefits. Claimant appealed. Employer filed a cross-appeal.

## II. DISCUSSION

### A. Standard of Review

We review the award of the Commission pursuant to Section 287.495 RSMo 2000.[1] We may modify, reverse, remand for hearing or set aside the award only on the grounds that: (1) the Commission acted without or in excess of its power; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient, competent evidence in the record to warrant the making of the award. Section 287.495.1; *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222 (Mo. banc 2003).

 We examine the entire record to determine if it contains sufficient, competent and substantial evidence to support the award. *Hampton*, 121 S.W.3d at 222–23. We will set aside the Commission's findings of fact and resulting award only if the award is contrary to the overwhelming weight of the evidence. *Id.*

### B. Extent of Claimant's Disability

#### 1. The Commission's Finding of Permanent and Partial Disability

In his first point on appeal, Claimant argues that the Commission erred in awarding PPD benefits because the evidence presented to the Commission supported a finding that following the Third Injury he was permanently and totally disabled.

 Total disability is defined by statute as the "inability to return to any

employment and not merely [the] inability to return to the employment in which the employee was engaged at the time of the accident." Section 287.020.6. "Any employment" means any reasonable or normal employment or occupation. *Reeves v. Midwestern Mortgage*, 929 S.W.2d 293, 296 (Mo.App. E.D.1996), *overruled on other grounds by Hampton, supra.* The burden of establishing permanent total disability lies with the claimant. *Schuster v.State, Division of Employment Security*, 972 S.W.2d 377, 381 (Mo.App. E.D.1998).

 We find that the Commission's determination of PPD is supported by the evidence. Claimant admits that none of the medical experts offered the opinion that he is totally disabled. Dr. Petkovich opined that Claimant sustained a 23% PPD of the body as a whole as a result of the Third Injury, which was in addition to the 10% PPD he assigned to each of the prior injuries. Dr. Petkovich testified that Claimant could return to light duty work within certain restrictions. Dr. Volarich gave the opinion that Claimant sustained a 45% PPD of the body as a whole as a result of the Third Injury. Dr. Volarich also rated Claimant at a 30% PPD as a result of the Second Injury, and a 25% PPD as a result of the First Injury. Dr. Volarich deferred to the opinion of a vocational expert on the issue of whether Claimant is employable in the open labor market. With respect to the ALJ's determination as to PPD, the Commission affirmed all findings and conclusions of the ALJ, including the ALJ's determination that the opinions of Dr. Petkovich were "more competent and persuasive" than those of Dr. Volarich. Where the opinions of the medical experts differ, the Commission may determine whose opinion is most credible. *Kelley v. Banta & Stude Construction*, 1 S.W.3d 43, 48 (Mo.App. E.D.

---

1. All statutory references are to RSMo 2000.

1999). Thus, in assessing the extent of Claimant's disability, it was within the Commission's discretion to rely on the opinion of Dr. Petkovich.

Although the Commission's finding of PPD was supported by the medical evidence, Claimant argues that Dr. Petkovich had no information regarding any of his potential transferable skills, academic records or prior work experience. Claimant argues that such information was relevant to a determination of whether he is partially or totally disabled, and therefore the Commission erred in giving undue weight to the testimony of Dr. Petkovich. Claimant presented evidence of his learning disability and academic deficiencies in the form of school records. Claimant argues that because of his learning disability and documented academic deficiencies, he is unable to perform most sedentary jobs, which require reading, writing and record-keeping skills. His physical restrictions prevent him from working in manual labor. Thus, he argues that his academic difficulties, combined with the limitations from his physical injuries, make him unemployable and render him totally disabled.

In asserting total disability, Claimant also relies on the testimony of Mr. England, who opined that the combination of Claimant's injuries and academic limitations rendered him unemployable. The Commission, however, found that Claimant failed to establish by competent and substantial evidence the extent of his learning disability. Further, he failed to establish that his learning disability is permanent; in fact, Claimant's school records documented some improvement. Having so found, it was within the Commission's discretion to disregard the opinion of Mr. England that Claimant's academic difficulties, combined with his physical restrictions, rendered him unemployable. In fact, Mr. England testified that within the physical restrictions placed on Claimant by Dr. Petkovich, there would be some limited assembly or packing positions that Claimant could perform. Where the evidence demonstrates that an injured employee is capable of returning to *any* type of work, he may not recover permanent total disability benefits as a matter of law. *Sutton v. Vee Jay Cement Contracting Co.,* 37 S.W.3d 803, 811 (Mo.App. E.D.2000), *overruled on other grounds by Hampton, supra.* Thus, having found the opinion of Dr. Petkovich to be the most credible, the Commission did not err in determining that Claimant is not totally disabled. Point one is denied.

**2. The Commission's Determination of the Percentages of Disability**

In his second point on appeal, Claimant argues that the Commission erred in finding that he sustained only a 27.5% PPD following the Third Injury, a 20% PPD following the Second Injury, and that the synergistic effect created by all of the injuries was only 10% and 5% respectively. In arguing that Commission's award was against the weight of the evidence, Claimant reasserts his claim that the Commission erred in basing its disability ratings on the opinion of Dr. Petkovich because Dr. Petkovich failed to take into account the extent of his physical and intellectual limitations.

Claimant testified to significant limitations in his day-to-day functioning, which he claims were not considered by Dr. Petkovich. Although Dr. Petkovich was his treating physician, Claimant asserts that "he had minimal knowledge of the damage to his life and activities." According to Claimant, the Commission should have given en more weight to the testimony of Dr. Volarich because he was aware of his daily problems and assigned a higher percentage of disability accordingly.

As stated above, it is within the Commission's discretion to determine which opinion is more credible. *Kelley,* 1 S.W.3d

at 48. Thus, it was in the Commission's discretion to rely on the opinion of Dr. Petkovich when making a determination as to the extent of Claimant's disability, and as to the synergistic effect of all of Claimant's back injuries. Moreover, we find that the Commission's determination as to the percentage of disability was supported by substantial and competent evidence. Point two is denied.

## C. The Commission's Award of Future Medical Benefits

■ Employer presents two points on cross-appeal, the second of which is dispositive. In Employer's second point on cross-appeal, it argues that the Commission erred in reviewing the issue of future medical benefits because the issue was not raised by any party in an application for review. In support of its argument, Employer claims that: (1) the Commission's jurisdiction is limited to issues raised in the applications for review; and (2) the Commission's review of the issue of future medical benefits denied the Employer its right to due process.

■ Section 287.480 provides a method for review of an ALJ's award by the Commission. The statute provides that, after a party files a timely application for review with the Commission, the full Commission shall review the evidence, or if considered advisable, hear the parties and their witnesses, and shall make an award. Section 287.480.1. Thus, the Commission's review of an ALJ award results in a modified trial *de novo*. *Shaw v. Scott*, 49 S.W.3d 720, 728 (Mo.App. W.D.2001).

■ The Commission's regulations govern the contents of the application for review. 8 CSR 20–3.030(3)(A) (2003).² The regulations require an applicant to

state with specificity in the application for review the reasons why the applicant believes the findings and conclusions of the ALJ are not properly supported. *Id.* It is not sufficient merely to state that the decision of the ALJ is not supported by competent or substantial evidence. *Id.*; *Stonecipher v. Poplar Bluff R1 School District*, 205 S.W.3d 326, 332 (Mo.App. S.D.2006).

The Southern District recently reviewed the question of whether the Commission violated the regulations when it rendered a decision on a non-appealed issue. *Stonecipher*, 205 S.W.3d 326. The *Stonecipher* Court reviewed the statutes, regulations and relevant case law governing the scope of the Commission's review. *Id.* at 331–32. The Court ultimately declined to render a decision on whether 8 CSR 20–3.030(3)(A) and its developed case law limit the Commission's jurisdiction to issues raised in the application for review. *Id.* at 332. Instead, the Court held that the Commission violated the claimant's due process rights by deciding the non-appealed issue without first providing notice to the parties and the opportunity to be heard. *Id.* at 332–33. In reaching this decision, the Court relied on the language of section 287.470, which allows the Commission, *after due notice to the parties*, to make an award ending, diminishing or increasing the compensation previously awarded. *Id.* at 331. The *Stonecipher* Court did not rule on the scope of the Commission's jurisdiction. Rather, without requiring the Commission to once again consider the non-appealed issue, the Court directed the Commission to give the parties appropriate notice and the opportunity to be heard if it chose to consider the non-appealed issue upon remand. *Id.* at 334.

■ Like the *Stonecipher* Court, we decline to decide the issue of whether the

---

**2.** The abbreviation "CSR" refers to the Code of State Regulations and all references to

regulations are to those as amended in 2003.

Commission is without jurisdiction to rule on issues not raised in the application for review because we find that the *Stonecipher* Court's holding regarding the due process requirement in section 287.470 is dispositive here. In the instant case, it is undisputed that Claimant did not raise the issue of future medical benefits in his application for review filed with the Commission, and no application for review was filed by Employer. It is also undisputed that the Commission failed to notify the parties of its decision to review this issue. Nevertheless, Claimant argues that the due process concerns raised by the *Stonecipher* Court are not present here because Employer briefed the issue of future medical benefits. It is unclear, however, at what stage of the proceedings, and to what extent, Employer briefed the issue of future medical benefits. The memoranda contained in the legal file do not address the issue of future medical benefits. When questioned at oral argument, neither party was certain as to the extent to which Employer addressed the issue of future medical benefits in its briefing before the Commission. While Claimant was able to point to specific pages in Employer's brief filed before the Commission that discussed the issue of future medical benefits, that brief is not in the record on appeal. Generally, appellate courts will not consider evidence outside the record on appeal. *8182 Maryland Associates, Ltd. Partnership v. Sheehan,* 14 S.W.3d 576, 587 (Mo. banc 2000). Based on the record before this Court, there is no evidence that Employer cured any due process concerns by addressing the issue of future medical in its briefing.

Accordingly, we find that the Commission denied Employer its right to due process when it decided the non-appealed issue of future medical benefits without first providing notice to the parties and an opportunity to be heard. Employer's second point on cross-appeal is granted.[3]

### III. CONCLUSION

The decisions of the Commission awarding PPD benefits from Employer and the Fund for Claimant's Second Injury and Third Injury are affirmed. The Commission's decision to award Claimant future medical benefits is reversed and this case is remanded to the Commission for further proceedings not inconsistent herewith. We do not require the Commission to once again consider the issue of future medical benefits, but if it chooses to do so, it should give Employer notice and the opportunity to be heard.

ROY L. RICHTER, P.J., and CLIFFORD H. AHRENS, J., concur.

---

3. Because this point is dispositive of the Employer's cross-appeal, it is unnecessary for us to address Employer's first point on cross-appeal which argued that Claimant failed to satisfy his burden of proof on the issue of future medical benefits.